STATE OF NEW JERSEY
IN THE INTEREST OF D. G. W.

Argued February 10, 1976—Decided June 25, 1976.

*Mr. James J. Lee,* Assistant Deputy Public Defender, argued the cause for appellant D.G.W. (*Mr. Stanley C. Van Ness,* Public Defender, attorney; *Mr. Lee* of counsel and on the brief).

*Mr. Jeffrey J. Lee,* Assistant Prosecutor, argued the cause for respondent State of New Jersey (*Mr. C. Judson Hamlin,* Middlesex County Prosecutor, attorney; *Mr. Lee* of counsel and on the brief).

*Ms. Susan W. Sciacca,* Deputy Attorney General, argued the cause for *amicus curiae* Attorney General (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney *pro se; Mr. Robert A. Rubenfeld,* Deputy Attorney General, of counsel and on the brief).

The opinion of the Court was delivered by

HUGHES, C. J. D.G.W., a juvenile, was charged with participating in 1973 and 1974 with three others in four instances of breaking and entering certain residences and school buildings and with theft and destruction of property therein worth thousands of dollars. If found guilty of these offenses, D.G.W. could be adjudicated a juvenile delinquent and incur statutory sanctions under *N. J. S. A.* 2A:4–14 *et seq.,* now *N. J. S. A.* 2A:4–42 *et seq.*

Pleas of guilty to three of the charges were entered by agreement and one charge was dismissed.

The Juvenile and Domestic Relations Court judge placed the appellant on probation for one year, which he had authority to do under the statute, *N. J. S. A.* 2A:4–61(c). He determined, over the objection of defense counsel, to apply as a condition to such grant of probation the making of restitution to a victim of the offense.

The court ordered that the specific amount of restitution (as related to the damages caused by the juvenile misdeeds) be "worked out" with the probation department of the county. The judge further announced his availabilty to settle any dispute.

Thereafter (as indicated in an expanded record ordered by the Appellate Division), the probation department assembled a list of specific items of damage at one of the school buildings totaling $626. Since four individuals had taken part in the depredations, D.G.W. was ordered to be responsible for one-fourth of the total damage or $156.50. This pro rata distribution did not originate with the Court, but was suggested by the probation department. The estimated values of the damaged items of property were "based

on the cost of repairing damaged machines plus the cost of materials and overtime estimated by their maintenance supervisor for damages to the building." No further verification of the amounts was requested by any of the four culprits. Accordingly D.G.W. neither requested nor received a hearing which would have permitted him to challenge the probation department's determination of the amount of restitution in his case.

Having failed to convince the Juvenile and Domestic Relations Court of its lack of jurisdictional authority to order restitution,[1] D.G.W. appealed to the Appellate Division. While his appeal was pending there unheard, we granted certification, 68 *N. J.* 497 (1975), primarily to examine the jurisdictional capacity *vel non* of the court to attach a condition of restitution to a probationary term granted a juvenile offender. Should that question be answered in the affirmative, the further question arises as to the due process rights of the juvenile incident to determination of the extent and terms of the restitution order.

The Attorney General joined as *amicus* to assist the Court in deciding the primary question of the power and jurisdiction of the Juvenile and Domestic Relations Court to order restitution in such manner, particularly in view of this Court's decisions in *State v. Mulvaney,* 61 *N. J.* 202 (1972) and *State in Interest of M. L.,* 64 *N. J.* 438 (1974). In *Mulvaney* the defendant was ordered to pay as a condition of probation one-fourth of the State's prosecution expenses. This Court vacated the imposition of these costs,

---

[1] Restitution has been equated with "reparation." *People v. Miller,* 256 *Cal. App.* 2d 348, 64 *Cal. Rptr.* 20 (1967), noted in 16 *U. C. L. A. L. Rev.* 456 (1969). A theoretical distinction has been noticed elsewhere. In *People v. Becker,* 349 *Mich.* 476, 84 *N. W.* 2d 833 (1957), the court argued that, by definition, restitution means the return of something taken, and reparation the undoing of something done. *See* Best & Birzon, Conditions of Probation: An Analysis, 51 *Geo. L. J.* 809, 826 (1963). For the purposes of the present case, the distinction is immaterial.

*qua* costs, under *N. J. S. A.* 2A:168–2, to the extent that they exceeded the amounts allowed under the specific statute dealing with costs in criminal causes, *N. J. S. A.* 22A: 3–1 to 6. And this result was reached in the face of a statutory authorization to a court, *N. J. S. A.* 2A:168–2, to include as a condition of probation that the probationer " * * * shall pay a fine or the costs of the prosecution, or both, * * *." This Court was unable to find in such language " * * * a grant of authority to *originate* a liability for costs which is not authorized by another statute." *State v. Mulvaney, supra,* 61 *N. J.* at 204 (emphasis added).

Following the doctrine of *Mulvaney,* Justice Sullivan wrote for this Court in *M. L.* that "the provision in the general probation and parole law authorizing a court to require *payment* of a fine as a condition of probation does not confer upon a court the power to *impose* a fine. It only authorizes the court to require payment of a fine as a condition of probation where a fine is otherwise provided for by law. This is clear from our decision in *State v. Mulvaney* * * * ." *State in Interest of M. L., supra,* 64 *N. J.* at 443 (emphasis in original). And since the Legislature had never provided for the imposition of a fine on a juvenile offender, this Court determined that the Juvenile and Domestic Relations Court had no power to impose one, even as a condition of probation.

The bases of the holdings in *Mulvaney* and *M.L.* were primarily matters of statutory interpretation. In *Mulvaney* the Court recognized that the broad terms of *N. J. S. A.* 2A:168–2 must be read *in pari materia* with the statutory limitation on costs in criminal causes reflected in *N. J. S. A.* 22A:3–1 to 6. In *M. L.,* the Court was unable to discern in the legislative plan with regard to the correction of juveniles a source of the power to impose a fine as a condition of probation or otherwise. *Contra,* the power to commit to an institution or make other disposition authorized by statute. *N. J. S. A.* 2A:4–61.

■ The omission by the Legislature of the sanction of a fine against a juvenile offender seems clearly responsive to the general legislative purpose. Fines are essentially punitive in nature, *State v. DeBonis,* 58 *N. J.* 182, 192 (1972), whereas the statutory policy with respect to juveniles is to correct and rehabilitate rather than punish. Justice Jacobs stated for this Court in *State v. Monahan,* 15 *N. J.* 34, 45 (1954) that:

Centuries of history indicate that the pathway lies not in unrelenting and vengeful punishment, but in persistently seeking and uprooting the causes of juvenile delinquency and in widening and strengthening the reformative process through socially enlightened movements. *Cf. A. L. I. Draft, Youth Correction Authority Act,* § 16 (1940). Amongst the states, New Jersey has long been in the forefront in its recognition and development of this pathway; * * *.

In the same case, Justice Heher, concurring, wrote:

Child delinquency is largely due to broken homes and parental irresponsibility and default, and unfavorable environmental and associated factors, involving pressures that are ofttimes beyond the child's control; and the State, as *parens patriae,* undertakes * * * to provide for the wayward victims protective custody, care, discipline, and correctional treatment to fit them, psychologically and physically, for a useful social life. * * * The policy is both preventive and reformative. * * * Wayward children are a community problem; adult behavior ofttimes has its roots in childhood experiences. The redemptive process concerns diagnostic techniques and child therapy, by psychologic, psychiatric and other modes and methods which are not of immediate interest. There are those who would question the wisdom and efficacy of sociological techniques. But, once the legislative field of action is conceded, the legislative policy is not a justiciable issue. [*Id.* at 52–53].

It is against this background that we must determine the threshold question; — whether restitution in its broad sense, including the concept of reparation, may be a valid condition of probation imposed upon a juvenile offender; — or whether it, in essence, would come within the Court's reasoning in *Mulvaney* and *M. L., supra,* as being discordant with the legislative purpose.

Beyond the validity of the restitution condition itself and the procedural due process necessary for the determination of the extent and terms of restitution to be made, are subsumed other questions raised by appellant. Where several participants are involved in a joint act of theft or vandalism, and all are required to make restitution, is a *pro rata* distribution of its burden appropriate? What is the relationship between indigency or ability to make restitution and the enforceability of the remedy of compelling restitution? What is the status of such remedy in the face of actual or potential claim for such damages in a civil action?

## I.

As to the disposition of juvenile delinquency cases, the statute provides:

*N. J. S. A.* 2A:4–61. *Disposition of delinquency cases.*

If a juvenile is adjudged delinquent the juvenile and domestic relations court may order any of the following dispositions:

\* \* \* \* \* \* \* \*

c. Place the juvenile on probation to the chief probation officer of the county or to any other suitable person who agrees to accept the duty of probation supervision for a period not to exceed 3 years *upon such written conditions as the court deems will aid rehabilitation of the juvenile*; or

\* \* \* \* \* \* \* \*

i. Such other disposition not inconsistent with this act as the court may determine. [emphasis added].

The general statutes dealing with the power of courts to suspend sentence and place offenders on probation provides:

*N. J. S. A.* 2A:168–1. *Power of courts to suspend sentence and place on probation; period of probation.*

\* \* \* \* \* \* \* \*

The courts having jurisdiction over juvenile or domestic relations cases, when it shall appear that the best interests of the public as well as of the person adjudged guilty of any offense \* \* \* before such court will be subserved thereby, shall have power to place the defendant on probation for a period of not less than 1 year nor more than 5 years. Such courts shall also have the power to place on probation under the same conditions children who shall come within the jurisdiction of the court. \* \* \*

The statute authorizing the fixing of conditions of probation provides:

*N. J. S. A.* 2A:168–2. *Conditions of probation.*
The court shall determine and may, at any time, modify the conditions of probation, and may, among others, include any of the following: That the probationer shall avoid injurious, immoral or vicious habits; shall avoid places or persons of disreputable or harmful character; shall report to the probation officer as directed by the court or probation officer; shall permit the probation officer to visit him at his place of abode or elsewhere; shall answer all reasonable inquiries on the part of the probation officer; shall work faithfully at suitable employment; shall not change his residence without the consent of the court or probation officer; shall pay a fine or the costs of the prosecution, or both, in one or several sums; *shall make reparation or restitution to the aggrieved parties for the damage or loss caused by his offense;* shall support his dependents. [emphasis added].

The court rule emphasizes, as does *N. J. S. A.* 2A:4–61, the rehabilitative purpose of probation:

*R.* 5:9–9. *Manner of Disposition.*
The court may make the following disposition of juvenile matters:
\* \* \* \* \* \* \* \*
(2) Make an adjudication and
\* \* \* \* \* \* \* \*
(C) Place the juvenile on probation to the chief probation officer of the county or to any other suitable person who agrees to accept the duty of probation supervision upon such *written conditions as the court deems will aid rehabilitation of the juvenile;* [emphasis added].

It is thus apparent that the legislative purpose would accommodate reparation or restitution (for brevity we shall hereafter include both concepts within the term "restitution") as a probation condition. Given its viability as a rehabilitative tool, imposition of restitution would also be permitted under the court rule.

We are bound to think, then, that unless restitution has to be considered primarily as punishment and little or nothing else, and thus discordant with the legislative plan (*Monahan, supra*), its use as a condition of probation would not fall within the interdiction of *Mulvaney* or *M. L., supra,* both of which holdings we re-affirm today.

The dichotomy of punitive and rehabilitative purpose and effect implicit in probation was recognized by Chief Justice Weintraub in *In re Buehrer,* 50 *N. J.* 501, 509 (1967):

> The argument assumes that punishment and rehabilitation are somehow incompatible. Of course they are not. \* \* \* Punishment and rehabilitation are not antagonists.
>
> Probation assumes the offender can be rehabilitated without serving the suspended jail sentence. But this is not to say that probation is meant to be painless. Probation has an inherent sting, and restrictions upon the freedom of the probationer are realistically punitive in quality. \* \* \* Probation is meant to serve the overall public interest as well as the good of the immediate offender. Thus *N. J. S. A.* 2A:168–1 authorizes the use of probation "[w]hen it shall appear that the best interests of the public as well as of the defendant will be subserved thereby." [footnote omitted].

It is significant that the same test is expressed by the Legislature with regard to probation for the juvenile offender, — "when it shall appear that the best interests of the public as well as of the person adjudged guilty \* \* \* will be subserved thereby \* \* \*." And if probation is to be granted for the accomplishment of the rehabilitative goals outlined by the statute, we think it follows, unless otherwise interdicted, that restitution as a condition thereof must be weighed in the same balance. Restitution manifestly serves the interest of the public for it is not right that either victim or the public should bear the whole burden, let us say, of loss from extensive juvenile vandalism. *Quaere:* does an order for restitution so clearly disserve the "best interests" of the juvenile offender that it must be abandoned as a rehabilitative tool? We think not.

We again advert to the words of Chief Justice Weintraub who, concurring in *State in Interest of Carlo,* 48 *N. J.* 224, 244 (1966), noted that "[t]he object of the juvenile process is to make men out of errant boys."[2] That truism underlay

---

2The "best interest" of society is primarily subserved by the rehabilitative aspect of restitution, — for the chastening effect of making amends holds a possibility at least that one day there will be

the decision of the court in *State in Interest of O. W.*, 110
*N. J. Super.* 465 (App. Div. 1970), upholding the right of
the Juvenile and Domestic Relations Court to impose against
the juvenile offender an order for the support of his illegiti-
mate child:

> Under the second point, O. W. states that the Juvenile and Domes-
> tic Relations Court is a creature of the Legislature, with limited
> powers and jurisdiction. He argues that the scope of disposition
> available to it with respect to a juvenile offender is limited by *N. J.
> S. A.* 2A:4–37 (probation or commitment to some institution or to
> the State Board of Child Welfare), and by *N. J. S. A.* 2A:4–39,
> which provides that no adjudication upon the status of a child under
> 18 "shall operate to impose any of the civil disabilities ordinarily
> imposed by conviction * * *." Therefore, since neither statute men-
> tions support payment by a juvenile, the order below was improper.
>
> The argument is specious and reflects a very restricted view of
> the Juvenile and Domestic Relations Court's jurisdiction. That court
> clearly has the power to award support in a bastardy proceeding,
> *N. J. S. A.* 9:17–12, and the statutes *in pari materia* should be con-
> strued together as a "unitary and harmonious whole, in order that
> each may be fully effective." *City of Clifton v. Passaic County Board
> of Taxation*, 28 *N. J.* 411, 421 (1958). To deny the court the ex-
> cise of its inherent power would be to thwart the rehabilitative ob-
> ject of the juvenile process — "to make men out of errant boys."
> *State in the Interest of Carlo*, 48 *N. J.* 224, 244 (1966) (Weintraub,
> C. J. concurring). Indeed, *In re El*, 26 *N. J. Misc.* 285, 290, 60 *A.*
> 2d 893 (Cty. Ct. 1948), held that the Juvenile and Domestic Rela-
> tions Court has exclusive jurisdiction in a bastardy proceeding against
> a juvenile. [*Id.* at 468].

Here we see no barrier to application of the rule that, as
in *O. W., supra,* whenever possible statutes should be con-
sidered *in pari materia* so that each may be given effect. As
we have noted, *N. J. S. A.* 2A:168–2 specifically recognizes
restitution as a valid condition of probation, and *N. J. S. A.*
2A:168–1 extends the probation concept to the juvenile of-
fender, as does *N. J. S. A.* 2A:4–61. Likewise, the im-
position of probation upon a juvenile offender, as upon an
adult, is associated with "the best interests of the public

---

emerging into the law-abiding mainstream, a decent citizen rather
than an "errant boy" grown into a predatory criminal.

as well as of the" offender. No disharmony in the statutes is apparent. If, then, one of the purposes of restitution is rehabilitation of the offender (and we think it is, as argued by much of the professional commentary on the subject[3]), we can determine the primary question.

---

[3] "There would seem to be sound reasons for the stipulation [i.e., restitution] in given cases. It is not only that aggrieved persons are recompensed. Unlike a fine as a condition of probation, or service of a jail term prior to supervision, restitution has an understandable logic. It is directly related to the offense and the attitude of the offender. There is a reality involved: society does not sanction fraud or other forms of theft; it does not approve injury inflicted upon an innocent person. Society wants to make sure the offender realizes the enormity of his conduct, and it asks him to demonstrate this by making amends to the individual most affected by the defendant's depredations.

\* \* \* \* \* \* \* \*

 "Restitution may have a positive casework connotation. It offers the individual something within reason that he can do here and now, within the limits of his ability to demonstrate to *himself* that he is changing. A fine is punitive. A jail sentence is retributive. But restitution makes sense. It is every man's obligation to meet responsibilities of this sort in civil life." [*D. Dressler, Practice and Theory of Probation and Parole* 176–77 (1959) (emphasis in original)].
Similar sentiment is expressed elsewhere:
 "Another common pecuniary condition of probation is the requirement that the probationer make restitution for the damage or injury caused by his crime. *It is necessary that the amount and other terms of restitution or reparation be fixed by the court* (or whatever agency is responsible for fixing the conditions); *this function may not be delegated to a probation officer.* The power to fix such a condition is generally upheld, although it is clearer where the statute specifically authorizes it. The restitution or reparation required may not go beyond the actual loss or damage as established in the prosecution and must be directly related to the crime. Restitution serves the purposes of rehabilitation, if used to support a healthy attitude by the offender. It also serves to restore the loss (although partially) to the victim of the crime. \* \* \* When reparation is a condition of probation, it is part of the defendant's rehabilitative effort, not a sentence." [*S. Rubin, The Law of Criminal Correction* 200–01 (1963) (emphasis added) (footnotes omitted)].
 *Cf.* a more skeptical view, — Comment, "Juvenile Probation: Restrictions, Rights and Rehabilitation," 16 *St. Louis U. L. J.* 276, 280 (1971).

■ We hold that a just and fair order as to restitution is a valid and may indeed be a salutary condition of a term of probation. In the case here reviewed the imposition of that condition was proper, but its effectuation, as we shall point out, was procedurally deficient.

## II

Having thus determined that imposition of restitution as a condition of probation is within the jurisdictional authority of the Juvenile and Domestic Relations Court, we now consider whether the procedure here followed violated the juvenile's right to due process of law. In this regard we must address two distinct questions: first, is the right of due process applicable here and second, if it is, what procedure must be followed to safeguard it. *E. g., Morrissey v. Brewer,* 408 *U. S.* 471, 481, 92 *S. Ct.* 2593, 2600, 33 *L. Ed.* 2d 484, 494 (1972) ; *Avant v. Clifford,* 67 *N. J.* 496, 518–22 (1975).

■ At the outset we note the recent expansion of due process protections to liberty and property interests, some not previously thought to be so protected. *See* Subrin & Dykstra, "Notice and the Right to Be Heard: The Significance of Old Friends," 9 *Harv. Civ. Rights-Civ. Lib. L. Rev.* 449, 465–78 (1974) ; Note, "Specifying the Procedures Required by Due Process: Toward Limits on the Use of Interest Balancing," 88 *Harv. L. Rev.* 1510, 1511–18 & n. 5 (1975). Essentially due process rights are found whenever an individual risks governmental exposure to a "grievous loss." *Morrissey v. Brewer, supra,* 408 *U. S.* at 481, 92 *S. Ct.* at 2600, 33 *L. Ed.* 2d at 494; *Goldberg v. Kelly,* 397 *U. S.* 254, 263, 90 *S. Ct.* 1011, 1018, 25 *L. Ed.* 2d 287, 296 (1970) ; *Joint Anti-Fascist Refugee Comm. v. McGrath,* 341 *U. S.* 123, 168, 71 *S. Ct.* 624, 646–47, 95 *L. Ed.* 817, 852 (1951) (Frankfurter, J., concurring) ; *Avant v. Clifford, supra,* 67 *N. J.* at 519. Thus, for example, due process is required before suspension of students, *Goss v. Lopez,* 419 *U. S.* 565, 95 *S. Ct.* 729, 42 *L. Ed.* 2d 725 (1975) ; revocation of probation or parole, *Gagnon v. Scarpelli,* 411 *U. S.* 778, 93 *S. Ct.*

1756, 36 *L. Ed.* 2d 656 (1973) ; *Morrissey v. Brewer, supra;* revocation of driver's license, *Bell v. Burson,* 402 *U. S.* 535, 91 *S. Ct.* 1586, 29 *L. Ed.* 2d 90 (1971); denial of social security benefits, *Richardson v. Perales,* 402 *U. S.* 389, 91 *S. Ct.* 1420, 28 *L. Ed.* 2d 842 (1971) ; termination of welfare benefits, *Goldberg v. Kelly, supra;* and attachment of wages, *Sniadach v. Family Finance Corp.,* 395 *U. S.* 337, 89 *S. Ct.* 1820, 23 *L. Ed.* 2d 349 (1969).

In the case before us we need not pause to distinguish between the application of due process protections to property interests and to liberty interests since both are implicated where restitution is imposed as a condition of probation. The juvenile has an obvious "property" interest in his earnings or other income to be paid over in satisfaction of the restitutionary amount. Additionally he has an obvious "liberty" interest in his continued probationary "freedom" which is subject to termination upon his unjustified failure or refusal to meet the restitutionary condition.

■ We are satisfied that deprivation of these interests triggers the juvenile's entitlement to due process and it remains only to decide what process is due. *Avant v. Clifford, supra,* 67 *N. J.* at 522.

The requirements of due process are, of necessity, flexible, calling for such procedural protections as the situation demands. Simply put, "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer, supra,* 408 *U. S.* at 481, 92 *S. Ct.* at 2600, 33 *L. Ed.* 2d at 494. To determine the precise procedures to be followed in cases such as this and to give specific guidance to the Juvenile and Domestic Relations Court judges, we begin by looking at "the precise nature of the government function involved as well as * * * the private interest that has been affected by governmental action." *Cafeteria & Restaurant Workers Local 473 v. McElroy,* 367 *U. S.* 886, 895, 81 *S. Ct.* 1743, 1748–49, 6 *L. Ed.* 2d 1230, 1236 (1961).

To protect his interest in his earnings and income and his interest in continued liberty the juvenile, minimally, is concerned about (1) the amount of damage he will be held responsible for, (2) the method of determining the value, (3) his pro rata share where several defendants are involved and (4) a reasonable method of repayment which realistically assesses his ability to pay.

Balanced against these concerns is the State's interest in maintaining a disposition procedure which, while always preserving the offender's right to be heard, is not unduly encumbered. We are satisfied that a balance can be struck short of a full-blown adversarial procedure, something more in the nature of a summary proceeding than in, for instance, the plenary hearing held necessary in *State v. Horne,* 56 *N. J.* 372 (1970) to justify classification of a convicted criminal defendant to sentencing under the Sex Offender Act, *N. J. S. A.* 2A:164–3 *et seq.*

### III.

██ ██ Once the court decides to impose restitution as a condition of probation (and unless, of course, the extent of damages and responsibility therefor are admitted by the offender), it should direct the probation department to conduct an investigation of the incident(s) contained in the complaint in order to determine the nature and extent of personal or property damages or other losses (*e. g.* financial) which were caused by the offender. The results of this investigation would then be summarized in a report similar to a presentence report for use by the court in setting the terms of probation. In this regard, the probation department is merely acting as a factfinder and an extension of the power of the court. This role is in accord with its statutorily delineated responsibility. *See N. J. S. A.* 2A: 168–3 and 11. However, the final decision on the amount of restitution to be made and the terms thereof is within the sole province of the trial judge. It is noted here that

other courts have disapproved of judicial abdication of this function as an improper delegation of responsibility. *E. g., People v. Gallagher*, 55 *Mich. App.* 613, 223 *N. W.* 2d 92 (1974); *People v. Frink*, 68 *N. Y. S.* 2d 103 (Cty. Ct. 1947); *Cox v. State*, 445 *S. W.* 2d 200 (Tex. Cr. App. 1969). Case law in New Jersey has similarly recognized this limitation on the delegation of the court's responsibility to the probation department in determining the amount of support payments in a divorce action, *see Plath v. Plath*, 99 *N. J. Super.* 394, 396 (App. Div. 1968), and the principle is equally applicable to the case here. Therefore, the trial judge below should not have left the conditions of restitution entirely in the hands of the probation department.

██ Contained in the report shall be the method used for determining the value of the losses incurred. Any recognized method of valuation may be utilized including, but not restricted to, cost of repair or replacement, market value or other reliable indicia (*e. g.* appraisals). Where feasible, verification of this information shall be provided in the report in the form of affidavits from contractors, materialmen or suppliers of goods taken or destroyed containing the cost of repairs or replacement; alternatively where other measures of value are used, affidavits shall be provided which describe the basis for the value given.

Also pertinent is the amount of money which the offender can or will be able to pay. The probation statute, *N. J. S. A.* 2A:168–2, does not specify that that factor is to be considered by the trial court in setting the conditions of probation, although it has been made explicit in other states. *See, e. g.*, N. Y. Penal Law § 65.10(2)(f) (McKinney 1967); Vt. Stat. Ann. tit. 28 § 252(b) (5) (Cum. Supp. 1975). *See also* A.B.A. Project on Standards for Criminal Justice, Standards Relating to Probation § 3.2(d) (Tent. Draft 1970); A.L.I. Model Penal Code § 301.1(2)(h) (Prop. Official Draft 1962); Final Report of the New Jersey Criminal Law Revision Commission, New Jersey Penal Code § 2C:45–1(b)(8)(Oct. 1971).

■ ■ Nonetheless other jurisdictions whose statutes (like ours) do not expressly list ability to pay as a consideration conduct hearings on this issue. *E. g.*, *People v. Gallagher*, 55 *Mich. App.* 613, 223 *N. W.* 2d 92 (1974) ; *State v. Gerard*, 57 *Wis.* 2d 611, 205 *N. W.* 2d 374, *appeal dismissed*, 414 *U. S.* 804, 94 *S. Ct.* 148, 38 *L. Ed.* 2d 40 (1973). In California, where the probation department is authorized to determine the amount and method of payment for restitution purposes (*see People v. Williams*, 247 *Cal. App.* 2d 394, 55 *Cal. Rptr.* 550 (Ct. App. 1966)), it considers the offender's ability to pay in reaching its conclusion. U. S. Dep't of Justice, 2 Survey of Release Procedures 232 (1939). In any case, regardless of the procedural device relied upon, the principle seems settled that the statutory power to impose restitution as a condition of probation must be exercised reasonably. *See People v. Tidwell*, 33 *Ill. App.* 3d 232, 338 *N. E.* 2d 113 (1975) ; *In Matter of Edwards*, 18 *N. C. App.* 469, 197 *S. E.* 2d 87 (1973). Therefore, in addition to the other information to be supplied, the probation department shall also furnish the court with sufficient details as to the offender's present and probable future ability to repay the damages caused, in order for it to properly fix the amount to be imposed.[4]

■ Prior to the time of the sentencing the contents of the probation report would be made available to the juvenile as in the case of a presentence report. *State v. Kunz*, 55 *N. J.* 128, 144–45 (1969). And at the sentencing

---

[4]In fixing the terms of restitution, the court will be aware that, in case of later default, in no event may the juvenile offender be institutionalized, or probation be terminated, solely because of *inability to* pay. *Cf. Tate v. Short*, 401 *U. S.* 395, 91 *S. Ct.* 668, 28 *L. Ed.* 2d 130 (1971) ; *Williams v. Illinois*, 399 *U. S.* 235, 90 *S. Ct.* 2018, 26 *L. Ed.* 2d 586 (1970) ; *State v. DeBonis*, *supra*. Consequently a restitution order against a school boy, for instance, without any prospect of even part-time employment (particularly under present economic conditions) might be a meaningless gesture. The judge however, being mindful of the rehabilitation factor, might suggest a search for part-time employment as bearing on good faith amends.

506

hearing, the juvenile may object to any of the material statements of fact contained therein and may present such evidence on his own behalf as the trial judge in his discretion deems necessary to the proper resolution of the issue. *Cf. Morrissey v. Brewer,* 408 *U. S.* 471, 487, 92 *S. Ct.* 2593, 2603, 33 *L. Ed.* 2d 484, 497–98 (1972). In *Morrissey,* Chief Justice Burger mentioned these minimum requirements of due process:

(a) written notice of the claimed violations [relevant facts] * * *; (b) disclosure * * * of evidence * * *; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body * * * members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons [or acting]. [*Id.* at 488–89, 92 *S. Ct.* at 2604, 33 *L. Ed.* 2d at 498–99].

Further, the *Morrissey* court emphasized that there was "no thought to equate this [procedural pattern] to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." *Id.* at 489, 92 *S. Ct.* at 2604, 33 *L. Ed.* 2d at 499.

 The utility and fairness of such flexibility are apparent when one considers the situation in the present appeal. Here a plea of guilty was entered by agreement, and with advice of counsel, to several charges of theft and vandalism involving thousands of dollars; a pro rata allocation of a small portion of that damage was charged against appellant in the amount of $156.50; no challenge was ever voiced to the specification of such damage items nor request made for their verification. While, as we hold here, the juvenile should have had access to the summary type of hearing which we describe, it would be a true distortion of due process requirements for him to be able to insist upon the

production for cross-examination of contractors, engineers, education department officials and other witnesses, particularly where there is not the slightest indication of denial of responsibilty for the damage specified, nor of its extent.

This is not to. say that under other circumstances the same flexibility should not be available to a judge conducting such a hearing. A vast amount of damage, let us say by vandalism, minor implication of the particular juvenile involved, perhaps his domination by a juvenile gang "leader" primarily responsible for the damage, or other factors would have to be considered by the court if projected. Thus even though the less implicated juvenile offender might be appropriately adjudged as delinquent, his relative culpability for the damage inflicted should be considered by the court.

The appellant raises for the first time on this appeal an objection to the pro rata assessment of damages against him as one of the four persons involved on the basis that there was no express finding that he was personally responsible for one-quarter of the damages. Although the appellant admitted committing the acts of vandalism alleged in the complaint and did not initially challenge the amount of reparation fixed by the probation department, we nonetheless will consider the viability of appellant's claim in view of our decision to remand for further proceedings below, as an aid to the trial judge in making his determination. While the issue of how to properly allocate repayment among multiple offenders in a (damages-type) criminal action or juvenile matter apparently has not previously arisen in this state, some courts which have considered restitutionary conditions have ordered joint and individual liability for all defendants. *See, e. g., People v. Flores,* 197 *Cal. App.* 2d 611, 17 *Cal. Rptr.* 382, 385 (Dist. Ct. App. 1961) ; *People v. Peterson,* 62 *Mich. App.* 258, 233 *N. W.* 2d 250, 255–56 (Ct. App. 1975). In *People v. Kay,* 36 *Cal. App.* 3d 759, 111 *Cal. Rptr.* 894 (Ct. App. 1973), the court reversed a trial court order of a pro rata assessment of damages against

five defendants arrested during a student demonstration. That decision is distinguishable since the record there indicated that 123 persons were involved in the demonstration, and 18 who were convicted in municipal court were not required to pay anything; nor was there any evidence that the defendants had damaged any property since they were convicted of assault. As indicated, the record here discloses that four persons participated in the vandalism of certain high school facilities and that D.G.W. admitted his role therein. In the circumstances here, had there been a summary hearing, the trial judge would not have been remiss in finding a rebuttable presumption of proportionate liability against the juvenile before him, with the proviso that the juvenile would be afforded the opportunity to challenge this assessment. *See People v. Scherr*, 9 *Wis.* 2d 418, 101 *N. W.* 2d 77, 80-81 (1960).[5]

Moreover, in the summary type of hearing which we project the judge will not be unmindful that in imposing the sanctions of the law, consideration is to be given to the offender as well as the offense involved. *State v. Ward*, 57 *N. J.* 75, 82 (1970); *State v. Ivan*, 33 *N. J.* 197, 201–02 (1960). Bearing in mind the rehabilitative purpose of probation restitution he may distinguish between culprit "A," let us say, existing in the most meager poverty, whose restitution, if any, will be rehabilitative because earned by the sweat of his brow; whereas as to culprit "B," perhaps the scion of a wealthy and supportive family, the same restitution requirement would be meaningless as a rehabilitative tool. In the latter case reparation in kind might be deemed more effective. In any event, a judge must not by inadvertence forget the lesson of Anatole France's cynical observation, commenting upon

---

[5]We do not wish to be understood as implying that there might not be circumstances justifying imposition upon multiple delinquents of a joint obligation to pay the entire amount, or some portion thereof, of the damage caused.

the majestic equality of the laws, which forbid rich and poor alike to sleep under the bridges, to beg in the streets, and to steal their bread. ["*Le Lys Rouge*," 5 *Works of Anatole France* 91 (W. Stephens transl. 1924)].

Finally, regarding the possible exposure of the juvenile offender to damages in a civil suit, since any amount collected and paid a victim by the probation department would be set off, we regard this issue as *de minimis* in the present case.

We remand to the Juvenile and Domestic Relations Court for re-establishment of the restitution amount upon which appellant's probation was conditioned, and for the completion of proceedings not inconsistent with this opinion.

So ordered.

*For remandment*—Chief Justice HUGHES, Justices MOUNTAIN, SULLIVAN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—7.

*Opposed*—None.