229 N.J. Super. 88 (1988)
550 A.2d 1252
THE STATE OF NEW JERSEY IN THE INTEREST OF L.M., JUVENILE-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 1, 1988.
Decided December 1, 1988.
*92 Before Judges PRESSLER, SCALERA and STERN.
Bernadette DeCastro, Assistant Deputy Public Defender argued the cause for appellant (Alfred A. Slocum, Public Defender, attorney, Bernadette DeCastro, on the letter brief).
Steven E. Lessick, Deputy Attorney General, argued the cause for respondent State of New Jersey (W. Cary Edwards, Attorney General, attorney, Steven E. Lessick, of counsel and on the brief).
The opinion of the court was delivered by SCALERA, J.A.D.
L.M., a juvenile, pleaded guilty to unlawful possession of a controlled dangerous substance, cocaine, within 1000 feet of a school, a third-degree crime contrary to N.J.S.A. 2C:35-7, adopted as part of the Comprehensive Drug Reform Act of 1986,[1]N.J.S.A. 2C:35-1 et seq. He was consequently adjudicated to be a juvenile delinquent and was sentenced to a two-year custodial sentence which was stayed and was placed on probation conditioned upon completion of a drug rehabilitation program. He also was required to pay the "$25 lab analysis fee" pursuant to N.J.S.A. 2C:35-20b, the mandatory Drug Enforcement and Demand Reduction (DEDR) fine of $1000 for third degree drug offenses pursuant to N.J.S.A. 2C:35-15(a)(3), and deprived of his privilege to secure a driver's license for six months after he reached the age of 17 years pursuant to N.J.S.A. 2C:35-16. He appeals from the imposition of that sentence, based solely on the assertion that the mandatory *93 nature of the penalty required by the DEDR statute is constitutionally infirm for several reasons.
The facts are not in dispute. On Wednesday, September 2, 1987, L.M. then 14 years old, was standing with two others, Kenneth Nero, an adult, and R.G., another juvenile, within 1000 feet of Paterson School Number 6. Paterson police officers on surveillance observed an unidentified black male approach Nero and R.G. and after a brief conversation, hand Nero some money. Nero then directed the black male to L.M., who handed him a small object which he placed in his pants pocket and walked away. Upon observing a second similar transaction, the police moved in to arrest L.M. and his associates. L.M. was observed to place several vials into his mouth but the officers forced him to spit out the vials which were found to contain "crack" cocaine.
L.M. argues that the mandatory DEDR penalties unconstitutionally discriminate between those juveniles who are adjudicated delinquent for committing drug offenses and those whose adjudications are based on any other offense because the latter are not subject to mandatory fines even if they have committed "more serious offenses." Further, he claims that the penalty provisions are fundamentally unfair and violate constitutional principles of due process by placing an unjustifiably heavy burden on a juvenile's liberty and property interests and amount to cruel and unusual punishment. Finally, he contends that both N.J.S.A. 2C:35-15 and N.J.S.A. 2C:35-16 are violative of the prohibition against statutory amendment and incorporation by reference contained in Art. IV, § VII, par. 5 of the 1947 New Jersey Constitution.
The State answers that the mandatory penalties required by N.J.S.A. 2C:35-15 are rationally related to the State's legitimate interest in deterring the possession, use and distribution of controlled dangerous substances by juveniles as well as adults; that L.M.'s arguments concern "only an administrative problem for the State" in collecting the DEDR penalties and not *94 a constitutional infirmity in the imposition of these penalties; that the mandatory penalty scheme is neither arbitrary nor discriminatory; and that the penalties are not excessive simply because of L.M.'s particular inability to pay them, especially in light of the alternative methods of payment or punishment which are available, nor are they "shocking" or "disproportionate" to the offenses committed. Finally, the State contends that the statutory provisions in question are not the type of fraudulent or deceptive legislation that would offend the prohibition on amendment or incorporation by reference contained in Art. IV, § VII, par. 5 of the New Jersey Constitution. We agree with the State and reject L.M.'s arguments.
First, the mandatory DEDR penalties of N.J.S.A. 2C:35-15 do not discriminate against juveniles in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as well as Art. I, par. 1, of the New Jersey Constitution. Equal protection claims under the Fourteenth Amendment are subject to a three-tier analysis, depending upon the type of right affected. Governmental action which purports to regulate a "fundamental right" or disparately treats a "suspect class" is subject to strict scrutiny  i.e., the action must further a compelling state interest and must be the least restrictive available means of accomplishing that objective. San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16, reh'g den, 411 U.S. 959, 93 S.Ct. 1919, 36 L.Ed.2d 418 (1973); Barone v. Dept. of Human Services, 107 N.J. 355, 364-65 (1987). "Intermediate scrutiny" is applied in analyzing such actions which regulate a "semi-suspect class" or affect a fundamental right in an indirect manner  i.e., the action complained of must serve an "important" governmental objective and be "substantially related" to the achievement of that objective. Craig v. Boren, 429 U.S. 190, 197, 97 S.Ct. 451, 456, 50 L.Ed.2d 397 (1976) reh'g den. 429 U.S. 1124, 97 S.Ct. 1161, 51 L.Ed.2d 574 (1977); Barone, 107 N.J. at 365. If neither "suspect" or "semi-suspect" classifications nor fundamental rights are involved, *95 the governmental action complained of is subjected only to a "rational basis" analysis  i.e., the action must be rationally related to the achievement of a legitimate state interest. Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976); Barone, 107 N.J. at 365; Rubin v. Glaser, 83 N.J. 299, 309 (1980), app. dis'd 449 U.S. 977, 101 S.Ct. 389, 66 L.Ed.2d 239 (1980).
Where the Legislature has created non-suspect classifications of offenders for purposes of fixing penalties, New Jersey courts apply the traditional rational basis test.[2]State v. Corbitt, 74 N.J. 379, 401 (1977), aff'd 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466 (1980). "[I]n the area of classification of criminal or penal offenders for purposes of penalty or punishment the Legislature may provide for differences of treatment so long as there is some rational connection between the classification and a proper legislative purpose." 74 N.J. at 401.
The statement of policy accompanying the enactment of the Comprehensive Drug Reform Act of 1986 declares in pertinent part that,
It is the intention of the Legislature to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders, and to facilitate where feasible the rehabilitation of drug dependent persons so as ultimately to reduce the demand for illegal control of dangerous substances and the incidence of drug related crime. It is also the policy of this state to afford special protection to children from the perils of drug trafficking, to insure that all schools and areas adjacent to schools are kept free from drug distribution activities, and to provide a especially stern punishment for those drug offenders who operate on or near schools and school buses, who distribute to juveniles, or who employ juveniles in a drug distribution scheme. [N.J.S.A. 2C:35-1.1(c)].
As was noted by the New Jersey Supreme Court in State v. Smith, 58 N.J. 202 (1971),

*96 The Legislature has wide discretion in the creation or recognition of different classes of offenders for separate treatment. In pursuing a legitimate objective it may recognize degrees of harm or possible harm and strike at what it feels more urgently needs repression. If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the objective sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests on grounds wholly irrelevant to achievement of the State's objectives; the separate treatment must admit of but one conclusion beyond a rational doubt, i.e., that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal. [58 N.J. at 207].
Viewing the basic scheme of the mandatory DEDR penalties there can be no cognizable argument that the Legislature's decision to deal harshly with drug law offenders as a class is constitutionally defective.
However, regarding L.M.'s complaints directed solely to the penalty provisions, we start with the observation that juveniles, like adults, cannot be incarcerated for involuntary failure to pay the mandatory penalties provided for in N.J.S.A. 2C:35-15, Bearden v. Georgia, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); State in Interest of D.G.W., 70 N.J. 488, 505 n. 4 (1976); State v. DeBonis, 58 N.J. 182 (1971). We need not address what recourse may be available to the State in the event a juvenile is unable to pay the fine.[3]
States are not required to convince the courts of the correctness of their legislative judgments. Rather, those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decision maker. [Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981)].
*97 L.M. also contends that the DEDR mandatory penalties prescribed by N.J.S.A. 2C:35-15 violate those provisions of the New Jersey Constitution which are the equivalent of the federal equal protection clause. In such cases, a balancing test is applied to consider "the nature of the affected right, the extent to which the governmental restriction intrudes upon it, and the public need for the restriction." Barone, 107 N.J. at 368. The focus is on whether an appropriate governmental interest is suitably furthered by the disparate treatment embodied in the action complained of. Ibid. Although our State Constitution in some cases may provide greater protection than the federal equal protection clause, the considerations which guide an analysis of the State afforded protections are to a large extent, implicit in the three-tier federal approach. Ibid. Thus the determination of the "nature of the affected right" under state constitutional analysis, which in turn determines the proper degree of scrutiny to be applied, is phrased in the same "suspect class"  "fundamental right" terminology used in federal equal protection analysis. See Barone, 107 N.J. at 369; Right to Choose v. Byrne, 91 N.J. 287, 305-06 (1982).
As noted earlier, the treatment accorded to both juveniles and adults as drug offenders under N.J.S.A. 2C:35-15 does not amount to a "suspect classification", nor does the juvenile drug offender's claimed entitlement to the same treatment as non-drug offenders constitute a "fundamental right." Since the legislative classification embodied in N.J.S.A. 2C:35-15 is clearly "rationally related" to the legitimate governmental purpose of eliminating and deterring drug use and distribution to and by minors, particularly in close proximity to schools, it is clear that a system of substantial mandatory financial penalties can rationally be said to further that purpose. "As long as the Legislature rationally advances a legitimate governmental objective, it need not be the wisest, the fairest or the one we would chose. It is not for the court to determine if there is a better way ..." Barone, 107 N.J. at 370. Accordingly, we conclude that the mandatory DEDR penalties of N.J.S.A. *98 2C:35-15 as applied to juveniles do not violate the equal protection guarantees of either the federal or state constitutions.
L.M. also argues that the mandatory DEDR penalties of N.J.S.A. 2C:35-15 violate his due process rights under the federal and state constitutions, "by placing an unjustifiably heavy burden on a juvenile's property and liberty interests." He relies primarily upon State in Interest of D.G.W., 70 N.J. 488 (1976), for the proposition that a juvenile offender, has a "fundamental right" to be free from financial penalties which are imposed mandatorily and without regard for his immediate ability to pay.
We regard D.G.W. to be inapposite. It involved a juvenile who, upon pleading guilty to three charges of breaking and entering, was placed on probation for one year conditioned upon the juvenile's making restitution to the victims of the offenses. 70 N.J. at 492. The Court undertook to examine whether the trial court could attach restitution as a condition of the juvenile's probation. Id. at 493. In ruling affirmatively, it noted that while fines are essentially punitive in nature, the statutory policy embodied in the State's juvenile offender laws at the time was "to correct and rehabilitate rather than punish," id. at 495, and that at least one of the purposes of restitution was to aid in the rehabilitation of the offender. Id. at 500. Nevertheless, the D.G.W. court went on to determine that although the imposition of restitution was proper, the procedure utilized had been deficient.
L.M., however, makes no claim that there were procedural deficiencies in the imposition of the fines. Quite the contrary, he simply contends that he has a fundamental right to be free from the imposition of financial penalties without any realistic assessment of his ability to pay. Yet no fundamental right is thus at stake. Neither the federal nor the state constitutions prohibits the imposition of sanctions upon juvenile offenders, purely for their punitive effect and without regard to *99 their rehabilitative value, whether monetary, probationary, or custodial.
The Legislature has elected to enact mandatory penalties and is within its authority to make certain of these provisions applicable to juvenile offenders.[4]N.J.S.A. 2C:35-15 and 16. See State in Int. of M.L., 64 N.J. 438 (1974). See also State v. Des Marets, 92 N.J. 62, 65-66 (1983), where the New Jersey Supreme Court declined to upset the imposition of a mandatory three-year prison term upon a youthful offender under the Graves Act, observing that that was "a matter solely for the Legislature to decide."
The intent to impose such mandatory sanctions of upon juveniles is clear:
In addition to any disposition authorized by this title, the provisions of [2A:4A-43], or any other statute indicating the dispositions that can be ordered for an adjudication of delinquency, every person convicted of or adjudicated delinquent for a violation of any offense defined in this chapter of Chapter 36 of this title, and every person placed in supervisory treatment pursuant to N.J.S.A. 2C:43-12 who is charged with any offense defined in this chapter or Chapter 36 of this title, shall be assessed for each such offense a penalty.... [N.J.S.A. 2C:35-15(a)].
L.M.'s basic claim that he has a fundamental right to be free from such mandatory penalties is meritless. See, e.g., State v. Fearick, 69 N.J. 32, 38-39 (1976), where the Court upheld, against equal protection and due process challenges, the imposition of a mandatory minimum jail term of 45 days upon any driver whose license had been suspended and who had become involved in an accident which resulted in injuries under N.J.S.A. 39:3-40. See also State v. Gantt, 186 N.J. Super. 262, 272 (Law Div. 1982), aff'd 195 N.J. Super. 114 (App.Div. 1984), aff'd 101 N.J. 573 (1986) (the mandatory sentencing provisions of the Graves Act, N.J.S.A. 2C:43-6c, "will not be considered violative *100 of due process unless not rationally related to [a] governmental objective such as strong deterrence of armed crime.").
Consistent with that approach we hold that the mandatory DEDR provisions of N.J.S.A. 2C:35-15 as applied to juveniles particularly are neither arbitrary nor discriminatory, and offend neither the substantive nor procedural due process guarantees of the federal and state constitutions.
L.M. contends that the mandatory DEDR penalties of N.J.S.A. 2C:35-15, as imposed upon juvenile offenders, are "excessive and unrealistic," "shocking to the general conscience, grossly disproportionate to the offense and clearly violate the principles of fundamental fairness," constituting cruel and unusual punishment in violation of the Eighth Amendment to the U.S. Constitution and Art. I, par. 12 of the New Jersey Constitution.
Under the Eighth Amendment, a punishment is presumed valid, but may be deemed "excessive" and unconstitutional if it (1) involves the unnecessary and wanton infliction of pain, or (2) is grossly out of proportion to the severity of the crime. Gregg v. Georgia, 428 U.S. 153, 169-77, 96 S.Ct. 2909, 2923-27, 49 L.Ed.2d 859 (1976). However, outside the context of capital punishment, it has been observed that "successful challenges to the proportionality of particular sentences have been exceedingly rare." Rummel v. Estelle, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980). The test under the New Jersey Constitution "is generally the same as that applied under the federal constitution." State v. Ramseur, 106 N.J. 123, 169 (1987). See also State v. Des Marets, 92 N.J. 62, 82 (1983). Unless a "substantial showing" is thus made a reviewing court must respect the Legislature's will. Des Marets, 92 N.J. at 82; State v. Muessig, 198 N.J. Super. 197, 201 (App.Div. 1985), certif. den. 101 N.J. 234 (1985).
Fines alone can amount to cruel and unusual punishment under certain circumstances but the situation is rare. Generally the fines are found to be proportionate and fair. See e.g. Whitney Stores, Inc. v. Summerford, 280 F. Supp. 406 *101 (D.S.C.), aff'd per curiam 393 U.S. 9, 89 S.Ct. 44, 21 L.Ed.2d 9 (1968). See also Traylor v. State, 458 A.2d 1170 (Del. 1983) (holding that the imposition of a $75,000 fine on conviction for trafficking in illegal drugs did not constitute cruel and unusual punishment); Wheatt v. State, 410 So.2d 479 (Ala. Crim. App. 1982) (holding that a $25,000 fine imposed on conviction for trafficking in marijuana did not "shock the court's sense of justice and was not disproportionate to the offense committed"); Paras v. State, 247 Ga. 75, 274 S.E.2d 451 (1981) (holding that a mandatory minimum $250,000 fine for trafficking in cocaine did not constitute cruel and unusual punishment). Likewise, in this case we are not convinced that the schedule of mandatory penalties provided in the DEDR even approach the grossly disproportionate level necessary to invalidate them on this basis. The imposition of a $1000 penalty upon an offender found guilty of a drug offense constituting a crime of the third degree clearly does not amount to such an excessive or disproportionate penalty that it is cruel and unusual punishment.
L.M. finally asserts that the mandatory penalty provisions of N.J.S.A. 2C:35-15 and N.J.S.A. 2C:35-16 effectively undertake to amend the dispositional provisions of N.J.S.A. 2A:4A-43 in violation of the prohibition against amendment and incorporation by reference contained in Art. IV, § VII, par. 5, of the New Jersey Constitution. Specifically, L.M. contends that N.J.S.A. 2A:4A-43 exclusively enumerates all potential dispositions to which a juvenile adjudicated delinquent may be subjected. Since no provision is made therein for any additional dispositions, L.M. asserts that N.J.S.A. 2A:4A-43 is required to be specifically amended if it is to include the mandatory penalties contained in N.J.S.A. 2C:35-15 and N.J.S.A. 2C:35-16.
Substantially the same argument was rejected by this court in State v. Martin, 222 N.J. Super. 66 (App.Div. 1987). There, the defendant was convicted of distribution of a controlled dangerous substance in violation of N.J.S.A. 24:21-19a(1), and sentenced under that provision to an eight year term of imprisonment. *102 222 N.J. Super. at 67. However, the trial judge imposed a parole disqualifier on one-half of that eight-year sentence, pursuant to N.J.S.A. 2C:43-6b. Defendant challenged the imposition of the parole disqualifier under the same constitutional provision.
In Martin we noted that the Title 2C provisions allowing the imposition of parole ineligibility terms challenged there did not in any way amend or alter the provisions of Title 24. Because Title 2C is complete legislation in itself, and therefore "one need not consult [Title 24] to understand and apply [Title 2C] or consult [Title 2C] to understand and apply [Title 24]," we determined that the Title 2C provisions challenged need not set forth the provisions of Title 24 at length in order to pass constitutional muster. 222 N.J. Super. at 70. Similarly, N.J.S.A. 2C:35-15 and -16 do not seek to "amend" N.J.S.A. 2A:4A-43b which continues in effect notwithstanding the provisions of the DEDR law. See note 4, supra. We adhere to the analysis in Martin, and basically for those same reasons we reject the challenge here to the provisions of N.J.S.A. 2C:35-15 and N.J.S.A. 2C:35-16 as being violative of Art. IV, § VII, par. 5 of the New Jersey Constitution.
AFFIRMED.
NOTES
[1] Although the legislative materials indicate that this is the title of the legislation, the act was passed and became effective in 1987.
[2] Age has not been declared a suspect class for purposes of equal protection analysis. See Johnson v. Lefkowitz, 566 F.2d 866 (2nd Cir.1977) cert. den. sub nom, Johnson v. Abrams, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 reh'g den., 441 U.S. 956, 99 S.Ct. 2185, 60 L.Ed.2d 1060 (1979); Shorez v. City of Dacono, 574 F. Supp. 130 (D.Colo. 1983).
[3] We are, however, satisfied that the Legislative right to impose reasonable penalties is not in any way impinged upon by whatever limitations there may be on the State's enforcement remedies. In this regard we do not find it necessary to address and decide the consequence of the provisions of the Juvenile Code like N.J.S.A. 2A:4A-43b(8) and 2A:4A-47 on the Legislative scheme providing for mandatory penalties under the DEDR. We are confident that the Legislature, having been alerted to the problems, will address them in amendatory legislation.
[4] We note that the State concedes that the mandatory incarceration provisions of the drug law are not applicable to juveniles, fortifying the conclusion that juveniles are treated somewhat differently.