STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ANTHONY J. TRIPPIEDI, JR.,
DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 9, 1985—Decided October 4, 1985.

424

Before Judges J.H. COLEMAN and HAVEY.

*Spagnoli & Thuring,* attorneys for appellant (*Joseph W. Spagnoli* on the brief).

*John H. Stamler,* Prosecutor of Union County, attorney for respondent (*Mark J. Cassidy,* Assistant Prosecutor, of counsel and on the letter brief).

The opinion of the court was delivered by

COLEMAN, J.H., J.A.D.

The question raised by this appeal is whether a Graves Act sentence imposed upon a defendant who suffers from coronary artery disease violates the constitutional proscription against a denial of equal protection or cruel and unusual punishment. Defendant was found guilty of possession of a handgun without a permit in violation of *N.J.S.A.* 2C:39-5b, (Count One); possession of a handgun with purpose to use it unlawfully against another person in violation of *N.J.S.A.* 2C:39-4a, (Count Two); and possession of hollow-nosed bullets in violation of *N.J.S.A.* 2C:39-3f, (Count Five). On Count Two, defendant was sentenced to a custodial term of seven years with three years of parole ineligibility. Defendant received concurrent sentences on the remaining counts. A post-sentencing motion to release defendant from prison pursuant to *R.* 3:21-10(b)(2) was denied. The court below concluded it was without authority to grant a *R.* 3:21-10(b)(2) motion when a defendant is serving a term of parole ineligibility mandated by *N.J.S.A.* 2C:43-6(c) (Graves

Act). We affirm the denial of the motion and conclude that the sentence does not violate the federal or state constitution.

On this appeal, defendant contends that the mandatory term of parole ineligibility deprives him of equal protection guaranteed by the Fourteenth Amendment of the United States Constitution and the *N.J.Const.* (1947), Art. IV, § 7, ¶¶ 8 and 9.[1] He also contends that the three year term of parole ineligibility mandated by the Graves Act constitutes cruel and unusual punishment. The trial judge concluded that irrespective of defendant's medical condition, a Graves Act defendant cannot be released from prison on a *R.* 3:21–10(b)(2) motion. In essence he concluded that the discretionary authority conferred by the rule is subordinate to the Graves Act.

■ Defendant's contention that the Graves Act sentence imposed deprives him of his constitutional right to equal protection is without merit. The underpinning for this claim is the fact that other second degree offenders who have committed offenses not covered by the Graves Act are not exposed to mandatory parole ineligibility. He contends that mandatory parole ineligibility for some second degree offenders and not for others creates a suspect classification. In *State v. Smith,* 58 *N.J.* 202, 207 (1971), the test for determining whether the classification is suspect was stated as follows:

> If there is some reasonable basis for the recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the object sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests upon grounds wholly irrelevant to achievement of the State's objective; the separate treatment must admit of but one conclusion beyond a rational doubt, *i.e.,* that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal.

---

[1] We note that while the New Jersey Constitution has no specific equal protection clause analogous to the Fourteenth Amendment, the New Jersey Supreme Court has interpreted it to provide analogous or superior protections. The most frequently used state constitutional basis for equal protection guarantees is *N.J. Const.* (1947), Art. I, ¶ 1. *Peper v. Princeton University Board of Trustees,* 77 *N.J.* 55, 79 (1978); *McKenney v. Byrne,* 82 *N.J.* 304, 316–317 (1980).

The purpose of the Graves Act is "to ensure incarceration for those who arm themselves [with guns] before going forth to commit crimes.... [I]ts focus is deterrence and only deterrence; rehabilitation plays no part in this legislation." *State v. Des Marets*, 92 *N.J.* 62, 68 (1983). *See also State v. Stewart*, 96 *N.J.* 596, 601 (1984). To achieve certainty of punishment, the Act proscribes suspension of imposition of sentence and noncustodial sentences. It mandates a period of parole ineligibility which must be served except perhaps where "the Act as applied might amount to cruel and unusual punishment." *State v. Des Marets, supra*, 92 *N.J.* at 82. The clear legislative objective of punishing more severely criminals who arm themselves with guns before committing crimes furthers a compelling governmental interest of deterring crimes. Possession of a firearm with purpose to use it against the person or property of another or possession of a firearm during the commission of certain crimes enhances substantially the potential of causing death or serious harm. Here, defendant possessed a loaded 9 millimeter automatic handgun in a tavern. All defendants who arm themselves in the manner proscribed by the Graves Act are exposed to the same mandatory parole ineligibility. We also find a rational relationship between deterring the commission of crimes while armed with guns and mandatory parole ineligibility. Consequently, there is no denial of equal protection.

■ Defendant further contends that his three year period of parole ineligibility constitutes cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution and *N.J. Const.* (1947), Art. I, ¶ 12. This assertion springs from the fact that defendant suffers from coronary artery disease which requires active medical treatment. Defendant argues that the Graves Act deprived the trial judge of the ability to exercise his discretion to release him from prison in accordance with the standard outlined in *State v. Tumminello*, 70 *N.J.* 187 (1976). Additionally, he contends that removal of the trial court's discretion "shocks the general conscience

and violates principles of fundamental fairness" and has caused "unnecessary and wanton infliction of pain upon defendant."

 Under the Eighth Amendment a penalty is deemed to be cruel and unusual punishment only if it "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime." *Coker v. Georgia,* 433 *U.S.* 584, 592, 97 *S.Ct.* 2861, 2866, 53 *L.Ed.*2d 982 (1977). Under our State Constitution the inquiry is

> ... whether the nature of the criticized punishment shocks the general conscience and violates principles of fundamental fairness; whether comparison shows the punishment to be grossly disproportionate to the offense; and whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim. *State v. Hampton,* 61 *N.J.* 250, 273–74 (1972). The showing that must be made to sustain the claim is substantial. *See, e.g., State v. Fearick, supra,* 69 *N.J.* 32 (1976). [*State v. Des Marets, supra,* 92 *N.J.* 82]

The evidence presented on the motion reveals that defendant has extensive coronary artery disease. Alan C. Koenigfest, Health Administrator for the Department of Corrections, testified that the Department of Corrections is capable of handling defendant's medical needs even if he suffers a heart attack. He stated:

> At present, we're not having any difficulty with providing for his medical needs. The attending physicians follow him on a routine basis.

> * * * * * * * *

> ... To be very clear, we can provide the medical services that any patient in the community would receive whether or not that would be successful is obviously, up to the complications that arise.

Dr. Samuel W. Madeira, a cardiologist, testified that defendant could suffer a heart attack at home or in prison. He performed a cardiac catheterization on defendant at Our Lady of Lourdes Medical Center after defendant commenced serving his sentence. The underlying problem of accelerated atherosclerosis has existed for about five years. He said defendant is likely to suffer a heart attack within five years whether he is in

or out of prison. He was in no position to contradict Mr. Koenigfest's testimony that the prison infirmary could provide faster treatment to defendant, in the event of a heart attack, than he could get at home.

The availability of medical care in prison militates against any interest that might be served by releasing a defendant from prison. See *State v. Sanducci*, 167 *N.J.Super.* 503, 510 (App.Div.1979), certif. den. 82 *N.J.* 263 (1979). Where the prison system can provide beneficial and desirable medical care, incarceration does not threaten further deterioration in defendant's health. *State v. Priester*, 99 *N.J.* 123, 135 (1985).

■ We are completely satisfied from our careful study of the record that the Department of Corrections is providing adequate care for defendant's coronary condition. We are also satisfied that although the cardiac catheterization was performed about three months after defendant was sentenced, his condition has not deteriorated to such an extent since the original sentence as to warrant clemency under the standards of *Tumminello*.[2] Absent a showing that incarceration is having a devastating impact on defendant's health, we conclude that the Graves Act sentence does not represent "purposeless and needless imposition of pain and suffering." Similarly, the term of parole ineligibility in the circumstances does not shock "the general conscience and violate[s] principles of fundamental fairness." The sentence clearly does not amount to cruel and unusual punishment.

Denial of the motion to be released from prison is affirmed accordingly.

---

[2]We leave open for another day whether a Graves Act defendant who satisfies the *Tumminello* standard is entitled to be released from prison pursuant to *R.* 3:21–10(b)(2). Such a case will require resolution of the supremacy issue between *R.* 3:21–10(b)(2) or *N.J.S.A.* 2C:43–6c.