STATE OF NEW JERSEY, PLAINTIFF, v. SHIRLEY ANDERSON, DEFENDANT.

Superior Court of New Jersey
Law Division Union County

April 25, 1986.

670

*Robert Lord* for plaintiff (*John H. Stamler,* Union County Prosecutor, attorney).

*Gary E. Stevens* for defendant (*Stevens and Spengler,* attorneys).

IRONSON, J.S.C.

This matter comes before the court by way of a trial *de novo* from a final determination of the Plainfield Municipal Court. At trial, in the court below, on December 18, 1985, defendant, Shirley Anderson, pled guilty to having in her possession, while operating a motor vehicle, under 25 grams of marijuana, in violation of *N.J.S.A.* 39:4–49.1, "Operating motor vehicle with certain drugs in possession or in motor vehicle." Under the section, recently amended, (effective July 17, 1985) marijuana is now an included illegal substance within the ambit of the statute. By reason of the amendment to *N.J.S.A.* 39:4–49.1, the judge below was obligated to impose on defendant, a mandatory two-year loss of driving privileges.[1]

From this determination, defendant appeals on the ground that the statute is unconstitutional. She contends that there is no rational relationship between the legislation and the end sought to be achieved by the Legislature. Further, defendant contends, as applied to her, the statute constitutes, "cruel and unusual punishment under the Eighth Amendment and the New Jersey Constitution."

*N.J.S.A.* 39:4–49.1, as amended, provides in pertinent part:

No person shall operate a motor vehicle on any highway while knowingly having in his possession or in the motor vehicle any controlled dangerous substance as classified in Schedules I, II, III, IV and V of the 'New Jersey Controlled Dangerous Substances Act', P.L.1970, c. 226 (C. 24:21 et seq.)....
A person who violates this section shall be fined not less than $50.00 and shall forthwith forfeit his right to operate a motor vehicle for a period of two years from the date of his conviction.

---

[1]Defendant received her ticket on October 18, 1985, subsequent to the amendment of *N.J.S.A.* 39:4–49.1.

Defendant argues that there is no legitimate, regulatory purpose for including marijuana (listed in schedule I of the Controlled Dangerous Substances Act) within the purview of *N.J.S.A.* 39:4–49.1. She asserts that, in essence, under the newly amended version of *N.J.S.A.* 39:4–49.1, the possession of only one seed of marijuana, while operating a motor vehicle, is as serious an offense as the possession of a pound of heroin, while operating a motor vehicle. Defendant maintains the mandatory loss of driving privileges for two years for the possession of less than 25 grams of marijuana is not rationally related to any legitimate, regulatory purpose of our Legislature. According to defendant, the unreasonableness of *N.J. S.A.* 39:4–49.1 is patently obvious.

Defendant argues that comparison to *N.J.S.A.* 39:4–50(a) shows the unreasonableness of *N.J.S.A.* 39:4–49.1's penalty. Defendant maintains that under *N.J.S.A.* 39:4–50(a) a conviction for being under the influence of an intoxicating liquor, for a first time offender, carries, at a minimum, a loss of driving privileges for only six months. Defendant contends that a violation of being under the influence of alcohol is a more serious offense than the mere possession of marijuana and therefore it is irrational to impose a harsher penalty for a less serious offense.

In reviewing the reasoning above employed, defendant has grossly understated the potential extent of the penalty imposed by *N.J.S.A.* 39:4–50(a). In full, as applied to a first time offender, it provides:

(1) For the first offense, to a fine of not less than $250.00 nor more than $400.00 and a period of detainment of not less than 12 hours nor more than 48 hours spent during two consecutive days of not less than six hours each day and served as prescribed by the program requirements of the Intoxicated Driver Resource Centers established under subsection (f) of this section and, in the discretion of the court, a term of imprisonment of not more than 30 days and shall forthwith forfeit his right to operate a motor vehicle over the highways of this State for a period of not less than six months nor more than one year.

While *N.J.S.A.* 39:4–49.1 carries a mandatory two-year loss of driving privileges, there is no term of imprisonment provided for by that section. Admittedly, while a loss of driving privileges may constitute a severe inconvenience to defendant, the penalty cannot be considered as severe as having to serve a prison sentence. It is therefore clear that the penalty that a court could impose under *N.J.S.A.* 39:4–50(a) potentially is far more onerous a penalty than that imposed by *N.J.S.A.* 39:4–49.-1.

■  Defendant also argues that our motor vehicle statutes should draw the same distinction between marijuana and other drugs, as is drawn under the New Jersey Controlled Dangerous Substances Act, *N.J.S.A.* 24:21–1 *et seq.* Defendant maintains that it is irrational to draw a distinction between marijuana and other drugs in the criminal penal statute and not to draw the same distinction in the motor vehicle statute. Essentially, defendant contends that there is no sound justification for imposing such a harsh penalty, by a quasi-criminal statute, where the criminal statute does not impose a consonant penalty for the possession of less than 25 grams of marijuana. Defendant again fails to appreciate that the purpose of the Controlled Dangerous Substances Act is distinct from the purposes of our motor vehicle statutes. In *State v. DiCarlo,* 67 *N.J.* 321 (1975), the court clearly addressed that the definition of a narcotic drug under the Controlled Dangerous Substances Act is not controlling in interpreting the same term in a motor vehicle statute [*N.J.S.A.* 39:4–50]. *DiCarlo* held,

It seems clear that the purposes of the two statutes are quite different. *N.J.S.A.* 39:4–50 seeks to prevent the operation of motor vehicles by those whose faculties are so impaired as to present a danger to the safety of others as well as themselves. [Citations omitted] On the other hand the Controlled Dangerous Substances Act, *N.J.S.A.* 24:21–1 *et seq.*, as well as earlier and similar legislation which it superseded, has had as its object the suppression of illegal traffic in narcotic drugs. [Citations omitted] Thus, in enacting *N.J.S.A.* 39:4–50, the Legislature concern was not with the specific type of drug used,

but rather with the effect that its ingestion by a driver would have upon his own safety as well as that of the general public.

*[Id.* at 325–326]

Applying the reasoning of *DiCarlo*, the court is not persuaded by defendant's logic. Our Legislature need not draw a distinction, in *N.J.S.A.* 39:4–49.1, as regards marijuana and other drugs. Suffice it to say that by including all illegal substances contained in schedules I, II, III, IV and V of the Controlled Dangerous Substances Act, the Legislature did not intend to draw a distinction, in terms of a penalty between possession of marijuana and other illegal drugs.

■ Defendant next puts forth that there is no reasonable basis for including marijuana within *N.J.S.A.* 39:4–49.1. Defendant relies on *State v. Carus*, 118 *N.J.Super.* 159 (Bergen Cty.Ct.1972), for this conclusion. In *Carus*, the court construed the prior *N.J.S.A.* 39:4–49.1 to not include marijuana within the statute's parameters. In pertinent part, the prior statutory provision provided:

No person shall operate a motor vehicle on any highway while knowingly having in his possession or in the motor vehicle any narcotic drug within the meaning of section 24:18–2 of the Revised Statutes or any amphetamine barbiturate, barbital, hypnotic or somnifacient drugs, tranquilizers ...

A person who violates this section shall be fined not less than $50.00 and shall forthwith forfeit his right to operate a motor vehicle for a period of two years from the date of his conviction.

Based on the language employed in the above version of the statute, the court in *Carus* interpreted the legislative intent not to include marijuana within its scope. That conclusion, according to *Carus* was based on the fact that marijuana was not classified as a narcotic. *Carus* did note, in *dictum*, that since marijuana was not a narcotic, an amendment to the statute would be necessary to bring marijuana within the reach of the statute. In amending *N.J.S.A.* 39:4–49.1, the Legislature, knowing that marijuana was excluded under the prior version of the statute, intended to include marijuana within the purview of the statute. Hence, by virtue of the legislative intent to

broaden the class of illegal substances included within the statute's focus, defendant's reliance on *Carus* is misplaced.

While defendant may dispute the wisdom of our Legislature including marijuana within the scope of *N.J.S.A.* 39:4–49.1, the court notes, in passing, that the court's function is not to rewrite statutes but to interpret them. Its function is to review the enactments of our Legislature and determine whether a rational relationship between the enactment and the goals sought by the Legislature exists. "To the extent that the legislative will is evident, it is our duty to follow it." *Mortimer v. Bd. of Review,* 99 *N.J.* 393, 398 (1985). The court's quest must therefore be whether the legislative intent is clear and whether there is a rational basis for the legislation.

In the Senate Law, Public Safety and Defense Committee statement, dated November 29, 1984, concerning the amendment to *N.J.S.A.* 39:4–49.1, the committee stated, in pertinent part:

The bill [No. 2293] removes an obsolete reference in the bill and replaces it with current terminology. In so doing, the bill expands the group of drugs which, if possessed, would result in a violation.

. . . .

Further, many of the controlled dangerous substances classified in Schedules I, II, III, IV and V of Title 24 do not fall within the prohibition of section 1 of P.L.1964, c. 289 (C. 39:4–49.1). This bill substitutes that reference for the reference to the repealed statute with the attendant benefit of broadening the scope of the prohibition of P.L.1964, c. 289 (C. 39:4–49.1).

The language contained in the above-mentioned Senate statement, is also embodied in the Senate statement, dated February 4, 1985, concerning the same subject matter. In pertinent part, the later statement provides:

The bill [No. 2293] removes an obsolete reference to R.S. 24:18–2 because that section has been repealed and replaces it with current terminology. In so doing, Assembly Bill No. 2293 *expands the group of drugs which, if possessed, would result in a violation.* [Emphasis supplied.]

As stated above, the clear mandate of the Senate was to expand the class of drugs included within the parameters of the statute. Defendant argues that there is no justification for

including marijuana within the statute, when considering the fact that a conviction for being under the influence of alcohol does not carry nearly as steep a punishment. Defendant's argument is unpersuasive. As stated in *State v. Fearick*, 69 *N.J.* 32 (1976), "the Legislature may constitutionally choose a class of offenders for unequal treatment without violating a defendant's constitutional right to equal protection and due process of law, provided there is a rational nexus between the classification and a valid legislative purpose". *Id.* at 38. Undoubtedly, a legitimate legislative purpose is the dissuading of the possession of any illegal drug by motorists travelling in our State. In addition, the statute will act as an incidental deterrent to any who would consider operating a motor vehicle while using an illegal drug. These constitute legitimate, regulatory purposes.

The court, while accepting that there are legitimate regulatory reasons for the statutory amendment, must now shift its focus to whether, under the circumstances, the penalty imposed constitutes "cruel and unusual punishment" under the Eighth Amendment and the New Jersey Constitution. Defendant maintains that the loss of her driving privileges for two years is cruel and unusual punishment.

Under our State Constitution,[2] in considering the validity of this claim, the inquiry must focus on "whether the nature of the criticized punishment shocks the general conscience and violates principles of fundamental fairness; whether comparison shows the punishment to be *grossly* disproportionate to the offense; and whether the punishment goes beyond what is necessary to accomplish any legitimate penal aim". *State v. DesMarets*, 92 *N.J.* 62, 82 (1983); emphasis supplied. "Absent such a showing, we must respect the Legislature's will." *State v. Muessig*, 198 *N.J.Super.* 197, 201 (App.Div.1985).

---

[2]New Jersey Constitution (1947), Art. I, par. 12.

Under the Eighth Amendment, "a penalty is deemed to be cruel and unusual punishment only if it (1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. *Coker v. Georgia*, 433 *U.S.* 584, 592, 97 *S.Ct.* 2861, 2866, 53 *L.Ed.*2d 982 (1977)." *State v. Trippiedi*, 204 *N.J.Super.* 422, 427 (App.Div.1985); see also *State v. Muessig, supra.*

From the vantage point of the court, ample authority to support the constitutionality of *N.J.S.A.* 39:4–49.1, as amended, appears. The court finds a rational legitimate purpose for the legislative enactment and further finds no showing of cruel and unusual punishment under either the Eighth Amendment or the New Jersey Constitution as a result of the statute's penalty. Applying the above mentioned tests, the court cannot conclude that the punishment imposed, rises to the level to constitute a gross disproportionate penalty. Based on defendant's stipulation of being in possession, while operating a motor vehicle, of less than 25 grams of marijuana, the court finds her guilty beyond a reasonable doubt of a violation of *N.J.S.A.* 39:4–49.1 and imposes a mandatory two-year loss of driving privileges. In addition, the court also imposes a $100 fine and $15 costs. Defendant shall forthwith surrender her license to the Clerk of the Court for transferral of same to the Motor Vehicle Department in Trenton.