69 N.J. 32 (1976)
350 A.2d 227
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT FEARICK, DEFENDANT-APPELLANT.
The Supreme Court of New Jersey.
Argued November 3, 1975.
Decided January 8, 1976.
*34 Mr. William T. McElroy argued the cause for appellant (Messrs. McElroy, Connell, Foley & Geiser, attorneys).
Mr. R. Benjamin Cohen, Assistant Prosecutor, argued the cause for respondent (Mr. Joseph P. Lordi, Essex County Prosecutor, attorney).
The opinion of the Court was delivered by HALPERN, P.J.A.D.,
Temporarily Assigned. The narrow issues presented on this appeal are (1) whether the mandatory jail term of the proviso contained in N.J.S.A. 39:3-40[1] applies to a defendant whose driver's license has been suspended but who admittedly did not cause an automobile accident which resulted in injuries, and (2) if it does, whether such mandatory jail term is cruel or unusual punishment and violative of the due process or equal protection requirements of the United States Constitution.
*35 The stipulated facts are fully detailed in State v. Fearick, 132 N.J. Super. 165 (App. Div. 1975), and will not be repeated herein at length. The pertinent portions thereof, relevant to a disposition of this appeal, may be briefly summarized. Defendant, Robert Fearick, suffers from recurring episodes of epilepsy. The Commissioner of Motor Vehicles, pursuant to authority granted by N.J.S.A. 39:3-10.4, et seq., suspended his driving privileges in New Jersey effective November 3, 1973. On January 13, 1974, while the suspension was still operative, he drove a car which was involved in an accident resulting in personal injuries to himself and a number of other persons. The State stipulated that except for driving while his license was suspended, defendant was entirely without fault in causing the accident.
Based on these facts, defendant pleaded guilty in the Livingston Township Municipal Court to violating N.J.S.A. 39:3-40, but reserved his right to contest the mandatory jail term in the proviso of the statute. He was sentenced to the Essex County Correctional Center for a term of 45 days, fined $200 and assessed costs of $10. The sentence was stayed pending appeal.
The Essex County Court, on a de novo appeal on the record below, imposed the same fine and costs, but imposed no custodial sentence. The trial judge determined that the imposition of a prison term rested in his sound discretion, and since the accident was not caused by any fault attributable to defendant, he saw fit not to confine him. On appeal, the Appellate Division modified the County Court's judgment by reinstating the 45 day prison term imposed by the Municipal Court. This Court granted defendant's petition for certification, 68 N.J. 143 (1975), and stayed the sentence pending this appeal.
We have reviewed the entire record and are in substantial accord with the comprehensive views expressed by the Appellate Division that N.J.S.A. 39:3-40, under the factual circumstances existing in this case, mandates the imposition of the minimum 45 day prison sentence even though *36 the accident was not the fault of or caused by defendant. We also agree that the statute is constitutionally unassailable. However, some supplemental observations are called for in light of the arguments made by defendant.
Defendant argues that the Legislature never intended, by the adoption of the proviso in N.J.S.A. 39:3-40, to mandatorily imprison a victim of epilepsy, albeit he was driving while his license was suspended, merely because he was involved in an accident wherein injuries resulted, when he was completely free of fault for the accident. To buttress his argument he points to that portion of the Appellate Division's decision which held:
The statute is designed to deter persons whose driver's licenses have been suspended or revoked from driving upon the public highways of the State. Protection of the public is the paramount consideration. It is not accurate to say that the Legislature has chosen to inflict punishment upon blameless individuals. Rather, the Legislature has chosen to recognize the occurrence of an accident in which someone is injured as an aggravating circumstance which justifies the imposition of a greater sanction. State v. Pickens, 124 N.J. Super. 193, 196-197 (App. Div. 1973), certif. den. 63 N.J. 581 (1973). (132 N.J. Super. at 168-169).
He argues that the use of the term "aggravating circumstance" presupposes that defendant must of necessity be at fault to "justify" the imposition of the jail term. The argument lacks substance. It is crystal clear that the Appellate Division adopted the reasoning and language used in State v. Pickens, supra, and used the term "aggravating circumstance" to indicate that if defendant had complied with the law, and refrained from driving on the highway, this particular accident would never have occurred. Fault played no part in the court's use of the term "aggravating circumstance." The "aggravating circumstance" referred to by the court is the fact that defendant violated the law by driving a car when he should not have, and injury resulted therefrom.
In like vein, defendant argues that the statutory words "* * * involved in an accident resulting in personal injury *37 * * *" should be interpreted to mean that defendant was "totally at fault, substantially at fault, partially at fault * * *." Again, we disagree. The Legislature never intended to place such a limitation on the word "involved." See N.J.S.A. 1:1-1 which requires us to construe statutory language by giving the words used "* * * their generally accepted meaning, according to the approved usage of the language. * * *" The word "involved," as used in the context of the whole statute, means no more than that the person violating the statute was "in" an accident, with resulting injuries, while driving when his license had been suspended.
The strained interpretation defendant asks us to place upon N.J.S.A. 39:3-40 is completely unwarranted. In view of the unambiguous language used in the statute evidencing the legislative goal to protect the public, as well as the suspended driver himself, by removing presumptively unsafe drivers from the road, defendant's contention would lead to an unworkable, absurd and anomalous result. See N.J. Builders, Owners and Managers Assoc. v. Blair, 60 N.J. 330, 338-340 (1972). Our judicial function is to effectuate the legislative goal to the extent permitted by the statutory provisions. Singleton v. Consolidated, 64 N.J. 357, 362-363 (1974); State v. Hatch, 64 N.J. 179, 186 (1973); State v. Johnson, 42 N.J. 146, 176 (1964); State v. Sheppard, 125 N.J. Super. 332, 336-337 (App. Div. 1973), certif. den. 64 N.J. 318 (1973). This cardinal rule of construction was incisively set forth by former Justice Benjamin Cardozo, of the United States Supreme Court, in his classic treatise, The Nature of the Judicial Process,
* * * In countless litigations, the law is so clear that judges have no discretion. They have the right to legislate within gaps, but often there are no gaps. We shall have a false view of the landscape if we look at the waste spaces only, and refuse to see the acres already sown and fruitful. I think the difficulty has its origin in the failure to distinguish between right and power, between the command embodied in a judgment and the jural principle to which the obedience of the judge is due. Judges have, of course, *38 the power, though not the right, to ignore the mandate of a statute, and render judgment in despite of it. They have the power, though not the right, to travel beyond the walls of the interstices, the bounds set to judicial innovation by precedent and custom. None the less, by that abuse of power, they violate the law. * * * (Seventeenth Printing, Yale University Press, September, 1957 at p. 129).
Viewed as above indicated, there is no room for judicial construction of N.J.S.A. 39:3-40  the State having proved the prescribed statutory elements, the courts have no alternative but to impose the penalty called for therein. We are charged with the duty of interpreting statutes, not of legislating. Powell v. Texas, 392 U.S. 514, 538, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), reh. den. 393 U.S. 898, 89 S.Ct. 65, 21 L.Ed.2d 185 (1968); State v. Sheppard, supra.
Finally, we likewise concur in the views expressed by the Appellate Division that even though defendant was blameless for this accident and the resulting injuries, he was not deprived of equal protection of the laws. Neither was he denied due process of law, nor did the prison sentence imposed constitute cruel and unusual punishment. The Legislature may constitutionally choose a class of offenders for unequal treatment without violating a defendant's constitutional right to equal protection and due process of law, provided there is a rational nexus between the classification and a valid legislative purpose. Kahn v. Shevin, 416 U.S. 351, 94 S.Ct. 1734, 40 L.Ed.2d 189 (1974); Rinaldi v. Yeager, 384 U.S. 305, 86 S.Ct. 1497, 16 L.Ed. 2d 577 (1966); State v. Smith, 58 N.J. 202 (1971). The classification of suspended drivers who are in accidents which result in injuries is not unreasonable merely because other suspended drivers are not mandatorily subject to being jailed if they drive without being in an accident resulting in injuries. The proviso in the statute, objected to by defendant, applies to all who fall within its classification. The legislative approach to a solution of the problem was reasonable and the distinctions drawn are based on practical *39 experience. South Carolina v. Katzenbach, 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). The mandatory jail term provides additional deterrence for those who drive while their licenses are revoked, and the incidence of the special penalty is supported rationally by the considerations already mentioned. The philosophy for such determination was stated thusly by Justice Jacobs in Burton et al. v. Sills, 53 N.J. 86, 95 (1968), app. dismissed 394 U.S. 812, 89 S.Ct. 1486, 22 L.Ed.2d 748 (1969).
The arguments bear on the wisdom of the legislation rather than on its validity. Presumably they were all weighed by the Legislature when it concluded that the Law would further the public interest and should be adopted. We do not sit here as a superlegislature and we accept the legislative judgment as to the wisdom of the statute.
The benefits and protection the statute affords to the public far outweigh the detriments imposed upon the selected class. See Rothman v. Rothman, 65 N.J. 219, 228 (1974); Jamouneau v. Harner, 16 N.J. 500 (1954), cert. den. 349 U.S. 904, 75 S.Ct. 580, 99 L.Ed. 1241 (1955); see also Note, 82 Harv. L. Rev. 921, 922 (1969).
For the first time on this appeal, by way of supplemental brief, defendant suggests that in considering his equal protection and due process arguments we go beyond the test of determining whether there was "a rational relationship between the legislative goal (`protection of the public from the hazard of unlicensed drivers upon the highways') and the means employed to achieve that goal." He argues that we should apply a stricter equal protection standard and require the State to show that N.J.S.A. 39:3-40 also "promotes * * * a compelling governmental interest," the test which the United States Supreme Court has ruled as appropriate "in reviewing legislative judgments that interfere with fundamental constitutional rights or that involve suspect classifications." San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 16, 93 S.Ct. 1278, 1287, 36 L.Ed.2d 16 (1973).
*40 We are satisfied, however, that there is no justification for applying that test to the statute here involved. As we said in State v. Krol, 68 N.J. 236, 253 (1975):
Under the so-called "two-tiered" analysis of the federal equal protection clause, the state need show only a rational basis for its classification, unless it involves "invidious" standards or infringes upon "fundamental" rights, in which case it must show a "compelling state interest."
N.J.S.A. 39:3-40 does not create statutory classifications which are inherently suspect or affect fundamental rights which are based solely on race, nationality, political affiliation, sex, right to vote, the right to travel, or any other "fundamental" right. Because defendant will be deprived of his liberty in this case does not command our finding he is entitled to the extraordinary protection afforded by the "compelling governmental interest" test. There is nothing inherently suspect in N.J.S.A. 39:3-40, nor does the mandatory jail sentence for those coming within its proviso improperly affect their fundamental rights. The test to be applied is the one we have applied, the "rational relationship" test. See San Antonio Independent School District v. Rodriguez, supra; State v. Krol, 68 N.J. 236, 253 (1975).
The penalty mandatorily imposed by the proviso in N.J.S.A. 39:3-40 cannot be classified as cruel and unusual punishment. Placing the offense proscribed by the statute against the form and extent of the punishment provided therein, we find nothing disproportionate involved. The punishment, in the light of present day concepts, appears facially reasonable and not cruel or unusual. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); State v. Hampton, 61 N.J. 250, 273-274 (1972); State v. Smith, 58 N.J. 202 (1971); State v. Guiendon, 113 N.J. Super. 361 (App. Div. (1971).
The judgment of the Appellate Division is affirmed.
*41 For affirmance  Justices MOUNTAIN, SULLIVAN, PASHMAN and SCHREIBER and Judges CONFORD, KOLOVSKY and HALPERN  7.
For reversal  None.
NOTES
[1] No person to whom a driver's license has been refused or whose driver's license or reciprocity privilege has been suspended or revoked, or who has been prohibited from obtaining a driver's license, shall personally operate a motor vehicle during the period of refusal, suspension, revocation, or prohibition.

No person whose motor vehicle registration has been revoked shall operate or permit the operation of such motor vehicle during the period of such revocation.
A person violating any provision of this section shall be fined not less than $200.00 nor more than $1,000.00, or be imprisoned in the county jail for not more than 6 months, or both provided, that if while operating a vehicle in violation of this section, such person is involved in an accident resulting in personal injury, the punishment shall include imprisonment for not less than 45 days. (Emphasis supplied).