160 N.J. Super. 315 (1978)
389 A.2d 992
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD W. RAUPP, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 13, 1978.
Decided June 29, 1978.
*316 Before Judges HALPERN, LARNER and KING.
Mr. James J. Leone argued the cause for appellant.
Mr. Lewis N. White, Assistant Prosecutor, argued the cause for respondent (Mr. Richard S. Rebeck, Middlesex County Prosecutor, attorney; Mr. Arthur G. Lash, Assistant Prosecutor, of counsel and on the brief).
*317 Mr. Alan Dexter Bowman, Deputy Attorney General, argued the cause as amicus curiae (Mr. John J. Degnan, Attorney General of New Jersey; attorney).
The opinion of the court was delivered by HALPERN, P.J.A.D.
The narrow issue presented is whether defendant is eligible for admission into the Middlesex County Pretrial Intervention Program (PTI).
The undisputed facts are that in June 1977 defendant's driver's license was suspended by the Director, Division of Motor Vehicles for failure to provide proof of insurance coverage on his car following an accident. In August 1977, driving while his license was still suspended, he was involved in another accident resulting in injury to a bicyclist, and he was charged with violating N.J.S.A. 39:3-40. Under the statute, if defendant were found to be guilty, he would be subject to a mandatory fine and imprisonment of not less than 45 days. See State v. Fearick, 69 N.J. 32 (1976).
Defendant's application for admission into Middlesex County's PTI program was denied by the program's coordinator. His application to the County Court for admission into the program was denied on January 24, 1978 on the ground that the court had no authorization or jurisdiction to consider the application.
We granted defendant's application for leave to appeal, stayed the disposition of the motor vehicle charge, directed the Attorney General to appear and file a brief as amicus curiae, and accelerated a hearing on the merits pursuant to R. 2:11-2. We now affirm.
PTI programs were instituted in New Jersey on an experimental basis by the Supreme Court when it originally adopted R. 3:28 in 1970.[1] The rule has been amended *318 several times through the years to meet unanticipated problems that soon surfaced. When defendant applied for admission into PTI in January 1978 the rule provided in relevant part:

3:28. Pretrial Intervention Programs
(a) In counties where a pretrial intervention program is approved by the Supreme Court for operation under this rule, the Assignment Judge shall designate a judge or judges to act on all matters pertaining to the program, with the exception, however, that the Assignment Judge shall him or herself act on all such matters involving treason, murder, kidnapping, manslaughter, sodomy, rape, armed robbery, or sale or dispensing of narcotic drugs by persons not drug-dependent.
(b) Where a defendant charged with a penal or criminal offense has been accepted by the program, the designated judge may, on the recommendation of the trial Court Administrator for the county, the Chief Probation Officer for the county, or such other person approved by the Supreme Court as program director, and with the consent of the prosecuting attorney and the defendant, postpone all further proceedings against said defendant on such charges for a period not to exceed 3 months.
Middlesex County's application to institute a PTI program for defendants charged only with indictable offenses was granted by the Supreme Court on August 6, 1975 upon the conditions that:
1. The program shall conform to the pretrial intervention plan designed by the Administrative Office of the Courts, entitled, "Proposal for Statewide Implementation of a Uniform Program of Pretrial Intervention Under New Jersey Court Rule 3:28," Revised December 1974 (PTI Plan). Procedural, programmatic and staff variations, not inconsistent with the intent of such plan may, however, be effected after prior consultation and approval of the Administrative Office of the Courts.
2. The program shall collect and report information about the program in such form and according to such schedules as may from time-to-time be required by the Administrative Office of the Courts.
3. The program shall conform to such future amendments to the PTI plan as may be designed by the Administrative Office of the Courts, or to such rules, programs or procedures for operation of pretrial intervention as may, in the future, be adopted by the Supreme Court.
*319 Defendant argues that fundamental due process requires that Middlesex County's PTI program be made available to him because of the mandatory jail term provision of N.J.S.A. 39:3-40. He points to paragraph (b) of R. 3:28 which permits a defendant charged with a "penal or criminal offense" to be eligible for PTI. He would have us construe the word "penal" to include any motor vehicle offense where a custodial sentence is mandatory. He does not contend that PTI is available to every person charged with a motor vehicle violation where a custodial sentence is not mandatory. We should note at this point that motor vehicle violations do not fall within the scope of the criminal justice system. They are deemed to be petty offenses and not "crimes." State v. Macuk, 57 N.J. 1, 9-10 (1970); Rodriguez v. Rosenblatt, 58 N.J. 281, 285-295 (1971); State v. Van Landuyt, 157 N.J. Super. 469 (App. Div. 1978).
It is our conclusion that the term, "penal offense," as used in R. 3:28, was not intended to apply to motor vehicle violations, notwithstanding the fact that some violations carry a mandatory custodial sentence. This conclusion is supported by the eligibility criteria set forth by the Administrative Office of the Courts in a proposal for implementation of a uniform statewide program which provided:[2]

R. 3:28 Exclusion Criteria
Defendants charged with any criminal or penal offense may be considered for enrollment in a program of pretrial intervention except those charged with the offenses enumerated in Title 39, New Jersey Statutes, "Motor Vehicles and Traffic Regulations." [at 72]
In view of the Legislature's mandatory directive in N.J.S.A. 39:3-40 that persons guilty of violating that statute be incarcerated for a minimum period, the Supreme Court, *320 assuming it had the power, would hardly be expected to nullify the Legislature's peremptory command by a court rule. The Legislature in plain and simple terms evidenced its intention of how a guilty person under N.J.S.A. 39:3-40 should be punished and its policy decision for so doing need not be expounded herein. Suffice it to say, it is not the function of the judiciary to alter that legislative policy. State v. Fearick, supra; State v. Garford Trucking, Inc., 4 N.J. 346, 354 (1950).
The Supreme Court's promulgated guidelines for the operation of PTI throughout the State[3] clearly indicate the court's intent not to deal with motor vehicle offenses. The comment to Guideline 3(d) provides:
Guideline 3(d) sets forth the policy that those charged with minor violations should not be admitted to a PTI program. It is felt that while no per se exclusion of non-indictable offenses is appropriate, the PTI process is not appropriate for such cases which do not involve a potential sentence of consequences. [99 N.J.L.J. at 874]
It is obvious from the manner in which R. 3:28 and the promulgated guidelines are structured, that the primary objectives of PTI are to conserve the court's resources, reduce the criminal court case backlogs by diverting eligible defendants from the criminal justice system, to aid those facing serious charges which impose social stigma upon conviction, and to give such persons found eligible for PTI the opportunity of being rehabilitated and taking their places in society as law-abiding and useful citizens. To burden the PTI program with minor offenses or motor vehicle violations, would so swamp the program as to be counterproductive of the entire PTI program in the State. Nor would it be feasible from a practical or economic viewpoint.
Finally, and perhaps most significantly, every case decided by the Supreme Court and articles written by those concerned *321 with, and experienced in, the administration of the criminal justice system, indicate that the diversion of those charged with criminal conduct is the motivation for the implementation of the PTI program. See State v. Leonardis (I), supra; State v. Leonardis (II), 73 N.J. 360 (1977); DelTufo [formerly, Director, Division of Criminal Justice], "Pretrial Intervention: A Means of Combatting Serious Crime," 5 Crim. Just. Q. 52 (1977); Note, 28 Rutgers L. Rev. 1203 (1975).
The objectives sought to be obtained by the Supreme Court in adopting R. 3:28 are clearly and distinctly set forth in Leonardis (I):
The pretrial intervention program is an alternative procedure to the traditional process of prosecuting criminal defendants. It is intended to augment the criminal justice system where prosecution would be counterproductive, ineffective or unwarranted. Sponsored in conjunction with various counseling and training services, PTI serves a rehabilitative purpose and ameliorates the stigma which is imposed on criminal defendants. While PTI may incidentally provide prosecutors with another means to dispose of cases and the opportunity to reduce the backlog of litigated cases which currently plagues the courts, it relieves a selected class of criminal suspects of the time-consuming and often debilitating rigors of the criminal process. [71 N.J. at 89-90; emphasis added].
Contrary to defendant's contention, the promulgation of R. 3:28 does not deprive defendant of the equal protection of the laws in violation of the State or Federal Constitutions merely because it is not applicable to motor vehicle violations under N.J.S.A. 39:3-40. The constitutional mandate of equal protection applies not only to state statutes but court rules as well. See Busik v. Levine, 63 N.J. 351, 373-374 (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973); Winberry v. Salisbury, 5 N.J. 240 (1950), cert. den. 340 U.S. 877, 71 S.Ct. 123, 95 L.Ed. 638 (1950); Weinstein, "Reform of Federal Court Rulemaking Procedures," 76 Colum. L. Rev. 905 (1976). This mandate does not require state laws or court rules to apply equally to all *322 persons. They pass constitutional muster if there is a rational relationship to a legitimate state purpose, and all persons similarly situated are treated alike. See Ross v. Moffitt, 417 U.S. 600, 612, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974); McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); State v. Fearick, supra, 69 N.J. at 39-40; State v. Krol, 68 N.J. 236, 253 (1975); Busik v. Levine, supra. We see nothing in R. 3:28 which is violative of defendant's constitutional right to equal protection.
Accordingly, the judgment below is affirmed.
NOTES
[1] See Zaloom, "Pretrial Intervention Under New Jersey Court Rule 3:28 Proposed Guidelines for Operation," 2 Crim. Just. Q. 178 (1974), for a full discussion of the adoption of PTI in New Jersey and other states.
[2] Administrative Office of the Courts, "Proposal for Statewide Implementation of a Uniform Program of Pretrial Intervention Under Court Rule 3:28" (1975), cited with approval in State v. Leonardis (I), 71 N.J. 85 (1976).
[3] "Guidelines for Operation of Pretrial Intervention in New Jersey," 99 N.J.L.J. 865 (1976).