STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ANNELLA PROFITA, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 9, 1982—Decided March 18, 1982.

426

Before Judges BOTTER, ANTELL and FURMAN.

*Donald R. Ambrose,* attorney for appellant.

*Alexander D. Lehrer,* Monmouth County Prosecutor, attorney for respondent (*Jacqueline Sharkey,* Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

BOTTER, P. J. A. D.

Defendant was convicted of violating *N.J.S.A.* 39:3–40 for operating a motor vehicle in New Jersey at a time when her New York driver's license was suspended. In addition to a fine of $200 which was imposed, defendant was sentenced to 45 days in the Monmouth County Corrections Institution, to be served on weekends. This accorded with the provisions of *N.J.S.A.* 39:3–40 which mandate such punishment where the motorist is involved in an accident resulting in personal injury. Enforcement of that penalty was stayed pending this appeal.

Defendant Annella Profita was a New York resident until moving to New Jersey in November 1980. Prior to moving to New Jersey defendant's New York driver's license was suspended because of her failure to respond to two summonses for traffic violations in that state. While driving her automobile on January 3, 1981 in the parking lot of a supermarket in Little Silver, New Jersey, defendant was involved in an accident with an eight-year-old boy who was a pedestrian. The boy was injured, but not seriously. A police officer who was called to the scene ascertained that defendant's New York driver's license had been suspended, and defendant acknowledged that she knew of the suspension. Thereafter, she was given a summons for violating *N.J.S.A.* 39:3–40. The description of the violation was "operate while D.L. refused or reciprocity privilege suspended," contrary to *N.J.S.A.* 39:3–40.

On this appeal defendant's principal contention is that defendant's "reciprocity privilege" had not been suspended within the meaning of *N.J.S.A.* 39:3–40 because no action had been taken by the New Jersey Division of Motor Vehicles to suspend her reciprocity privilege pursuant to *N.J.S.A.* 39:5–30. Defendant's contention is that a foreign motorist operating a motor vehicle in New Jersey while his driver's license has been suspended or revoked in his home state is not in violation of *N.J.S.A.* 39:3–40 although he may be in violation of other provisions of New Jersey's motor vehicle laws, such as *N.J.S.A.* 39:3–10, which provides that no person shall drive a motor vehicle on a highway in this State "unless licensed to do so in accordance with this article." *N.J.S.A.* 39:3–17 extends the right to a nonresident driver to drive a vehicle in this State, provided he "has complied with the law of his resident State, or country, with respect to the licensing of drivers or chauffeurs." Conceding that the suspension of her New York driver's license automatically voided her reciprocity privilege to drive in this State, defendant contends, nevertheless, that she did not violate *N.J.S.A.* 39:3–40 because the suspension or revocation of a foreign driver's reciprocity privilege in that section refers to separate proceedings in New Jersey pursuant to *N.J.S.A.* 39:5–30 by which such privilege may be suspended or revoked.

These contentions were rejected by the judges of the municipal court and the court below to which defendant had appealed her conviction. Both judges held that *N.J.S.A.* 39:3–40 applies to any driver whose driver's license had been suspended or revoked, and that defendant was such a driver. We agree with this interpretation. *N.J.S.A.* 39:3–40 provides in part:

> No person to whom a driver's license has been refused or whose driver's license or reciprocity privilege has been suspended or revoked, or who has been prohibited from obtaining a driver's license, shall personally operate a motor vehicle during the period of refusal, suspension, revocation, or prohibition.

By amendment in 1941 the language was added making this section applicable to persons whose "reciprocity privilege" had been suspended or revoked. *L.*1941, *c.* 344, § 1. At that

time *N.J.S.A.* 39:5–30, which authorizes the Director of Motor Vehicles to suspend or revoke a registration certificate and driver's license for a violation of the New Jersey motor vehicle laws, did not expressly authorize the revocation or suspension of a nonresident's reciprocity privilege. It was not until the 1945 amendment to *N.J.S.A.* 39:5–30, *L.*1945, *c.* 256, § 1, that this section expressly authorized the suspension or revocation of a nonresident's reciprocity privilege. Thus, the 1941 amendment to *N.J.S.A.* 39:3–40, which made it unlawful for a person to operate a motor vehicle in this State while his reciprocity privilege was suspended or revoked, must have referred to the automatic loss of the reciprocity privilege provided by *N.J.S.A.* 39:3–17 rather than the loss of such privilege by separate action in this State under *N.J.S.A.* 39:5–30. Although not referring to this legislative history, the Attorney General of New Jersey had ruled by Formal Opinion, 1956, No. 23, that *N.J.S.A.* 39:3–40 applies to a nonresident whose driver's license has been suspended or revoked in his home state, whether or not action has been taken against his reciprocity privilege in this State under *N.J.S.A.* 39:5–30. We conclude, therefore, that *N.J.S.A.* 39:3–40 applies to any resident and nonresident motorist whose driver's license has been suspended or revoked and to a nonresident motorist whose privilege to drive a motor vehicle in this State has been automatically suspended as a consequence of the suspension of his foreign driver's license, as well as to nonresidents whose reciprocity privilege has been suspended in this State by proceedings under *N.J.S.A.* 39:5–30.

We turn now to defendant's contention that there was insufficient proof of personal injury to the child pedestrian who was involved in the accident with defendant's car. Defendant contends that the injury suffered by the child was so minimal that the Legislature could not have intended the strict penalties provided in *N.J.S.A.* 39:3–40 to apply to this case. The boy who was struck suffered a swollen ankle and some cuts and bruises on his knee and foot. He was given emergency treatment at a hospital and was released. His injury was painful, he had

difficulty walking for several days, and sometime later a toenail fell off.

There is no basis for the conclusion that the Legislature meant the mandatory jail sentence to apply only in cases of serious injury. The purpose of the statute is to remove "presumptively unsafe drivers from the road...." *State v. Fearick*, 69 *N.J.* 32, 37 (1976). The simple and clear language of *N.J.S.A.* 39:3–40 makes it applicable to all persons "involved in an accident resulting in personal injury ...." In our view, the proofs in this case amply support the finding of personal injury within the meaning of *N.J.S.A.* 39:3–40. In *State v. Fearick, supra,* the Supreme Court rejected the contention that the mandatory 45-day jail sentence was meant to apply only to drivers who were at fault in causing the accident. Similarly, we are compelled to apply the plain meaning of the words used in the statute, "accident resulting in personal injury," and reject the contention that the Legislature meant more serious personal injury than occurred in this case.

■ Lastly, defendant contends that the trial judge erred in allowing the child's father to testify to the child's injuries because the father was not named as a person having relevant knowledge during pretrial discovery as required by *R.* 3:13–3(a)(7), made applicable by *R.* 7:4–2(g) to cases tried by a municipal prosecutor in a municipal court. The record before us does not sustain this contention. We were not furnished a copy of the letter sent by defendant in which discovery was requested. The transcript indicates that by that letter defendant's attorney sought to inspect and receive copies of documents pertaining to the case. The prosecutor stated that he had complied with the request and that defense counsel was given permission to look at anything in the file. The documents furnished to defense counsel were the police report and a "First Aid report." In these circumstances the trial judge did not abuse his discretion in allowing the boy's father to testify, even though his name apparently was not contained in the documents

furnished to defense counsel. No specific request was made before trial for the names of prospective witnesses. Defense counsel did not ask for a continuance to meet the testimony concerning the boy's injuries, and we cannot perceive that the failure to supply the father's name before trial prejudiced defendant in preparing to meet the State's case.

Affirmed.