601 A.2d 698

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. REYNALDO LAGARES, A/K/A "PAPO,"
DEFENDANT–APPELLANT.

Argued November 18, 1991—Decided February 6, 1992.

*Theresa Yvette Kyles,* Assistant Deputy Public Defender, argued the cause for appellant (*Wilfredo Caraballo,* Public Defender, attorney).

*Robert E. Bonpietro,* Deputy Attorney General, argued the cause for respondent (*Robert J. Del Tufo,* Attorney General of New Jersey, attorneys).

The opinion of the Court was delivered by

GARIBALDI, J.

This appeal concerns the constitutionality of *N.J.S.A.* 2C:43–6f (Section 6f), the repeat-offender-sentencing provision of the Comprehensive Drug Reform Act of 1986, which permits imposition of an extended term of imprisonment with a minimum term on defendants convicted of drug-related offenses who have previously been convicted of similar crimes. Whether an extended term is imposed depends on the prosecutor because Section 6f takes effect only on his or her application. However, the statute sets forth no guidelines to govern the prosecutor's discretion nor does it require the prosecutor to set forth reasons for making a Section 6f motion. Finally, the statute does not provide for judicial review of the prosecutor's decision to seek an enhanced punishment. Once the prosecutor invokes the statute and establishes the existence of a prior conviction, the court's role is limited to determining the term of years within the extended-term range to be imposed.

Defendant also raises, for the first time on appeal, a separate challenge to the constitutionality of *N.J.S.A.* 2C:35–15, which provides for mandatory Drug Enforcement and Demand Reduction (DEDR) penalties.

## I

A jury convicted defendant, Reynaldo Lagares, of possession of a controlled dangerous substance, contrary to *N.J.S.A.* 2C:35–10 (count one); possession of a controlled dangerous substance with intent to distribute, contrary to *N.J.S.A.* 2C:35–5(a)(1) (count two); and distribution of a controlled dangerous substance, contrary to *N.J.S.A.* 2C:35–5 (count three). The convictions arose from defendant's sale of cocaine on a single occasion to an undercover police officer.

Based on defendant's 1982 convictions for possession of marijuana and possession of marijuana with intent to distribute, the State moved for an extended term of imprisonment pursuant to *N.J.S.A.* 2C:43–6f. The statute states in pertinent part that

[a] person convicted of manufacturing, distributing, dispensing or possessing with intent to distribute any dangerous substance * * * under N.J.S. 2C:35–5 * * * who has been previously convicted of manufacturing, distributing, dispensing or possessing with intent to distribute a controlled dangerous substance * * * *shall upon application of the prosecuting attorney be sentenced by the court to an extended term as authorized by subsection c. of N.J.S. 2C:43–7, notwithstanding that extended terms are ordinarily discretionary with the court.* The term of imprisonment shall, except as may be provided in N.J.S. 2C:35–12, include the imposition of a minimum term. The minimum term shall be fixed at, or between, one-third and one-half of the sentence imposed by the court or three years, whichever is greater * * * during which the defendant shall be ineligible for parole.

The court shall not impose an extended term pursuant to this subsection unless the ground therefor has been established at a hearing. At the hearing, which may occur at the time of sentencing, the prosecutor shall establish the ground therefor by a preponderance of the evidence. In making its finding, the court shall take judicial notice of any evidence, testimony or information adduced at the trial, plea hearing or other court proceedings and shall also consider the presentence report and any other relevant information. [emphasis added.]

At a previous hearing the prosecutor had introduced unrefuted evidence establishing defendant's prior convictions. Therefore, the court granted the State's motion for an extended term.

At the sentencing hearing, the court explained that it had no discretion to impose a term less than an extended term of imprisonment or to forgo ordering a period of parole ineligibility. The court explained:

The defendant must realize that the Court really doesn't have much discretion and that even for this offense, by virtue of the 1982 conviction, he is paying a penalty much—much greater than most other defendants would have been sentenced to, had the crime of the sale of cocaine occurred prior to the amended [C]omprehensive [D]rug [R]eform [A]ct.

The court merged counts one and two into count three, a third-degree offense. Without enhancement, defendant's convictions would have carried a sentence in the range of three to five years with a presumptive four-year term. A parole ineligibility period would have been within the sentencing court's discretion. However, the statute mandates that the trial court impose an extended term of imprisonment outside the ordinarily applicable range of three to five years. Defendant was sentenced to seven years imprisonment with a three-year parole disqualifier.

In addition to his custodial sentence defendant was assessed a $1,000 DEDR penalty, a $50 forensic lab fee, and a $30 Violent Crime Compensation Board penalty. Finally, the court suspended defendant's driving privileges for six months.

On appeal defendant challenged the sentencing provision by arguing that it violated the separation-of-powers doctrine by vesting in the prosecutor unbridled and unreviewable discretion over sentencing. The Appellate Division found the statute constitutional and affirmed defendant's sentence. 247 *N.J.Super.* 392, 400, 589 *A.*2d 630 (1991). The court reasoned that the judiciary retained sentencing authority under the statute because the prosecutor was required to show a prior conviction and because the sentencing court had the ultimate power to select defendant's extended-term sentence from the appropriate range. *Ibid.* The Appellate Division also rejected defendant's equal-protection and due-process arguments. *Id.* at 401–02, 589 *A.*2d 630.

Finally, the Appellate Division summarily rejected defendant's argument that *N.J.S.A.* 2C:35–15, which imposes mandatory DEDR penalties, is unconstitutional. *Id.* at 402–03, 589 *A.*2d 630.

We granted certification, 126 *N.J.* 337, 598 *A.*2d 894 (1991), and now reverse so much of the Appellate Division judgment as affirms defendant's extended-term sentence but affirm in all other respects.

## II

The New Jersey Constitution provides:

The powers of the government shall be divided among three distinct branches, the legislative, executive, and judicial. No person or persons belonging to or constituting one branch shall exercise any of the powers properly belonging to either of the others, except as expressly provided in this Constitution. [*N.J. Const.* art. III, para. 1.]

The separation-of-powers doctrine was designed to "maintain the balance between the three branches of government, preserve their respective independence and integrity, and prevent the concentration of *unchecked* power in the hands of any one branch." *David v. Vesta Co.*, 45 *N.J.* 301, 326, 212 *A.*2d 345 (1965) (footnote omitted). Nevertheless, we have long recognized that inflexible classification of the branches' duties and powers is neither possible nor desirable. *See Worthington v. Fauver*, 88 *N.J.* 183, 206, 440 *A.*2d 1128 (1982); *Vesta, supra,* 45 *N.J.* at 324, 212 *A.*2d 345. A "strict interpretation of the principle, rigidly classifying all governmental action as legislative, executive, or judicial was never intended by * * * the drafters of our State Constitution * * *." 45 *N.J.* at 323–24, 212 *A.*2d 345. Consequently, the doctrine calls for a " 'dispersal of decisional responsibility in the exercise of each power, as distinguished from a separation of powers * * *.' " *State v. Leonardis*, 73 *N.J.* 360, 371, 375 *A.*2d 607 (1977) (*Leonardis* II) (quoting John J. Gibbons, *The Interdependence of Legitimacy: An Introduction to the Meaning of Separation of Powers,* 5 *Seton Hall L.Rev.* 435, 436 (1974)).

With that flexibility in mind, we have concluded that the separation of powers "certainly never did create[ ] utterly exclusive spheres of competence. The compartmentalization of governmental powers among the executive, legislative and judi-

cial branches has never been watertight." *In re Salaries for Probation Officers,* 58 *N.J.* 422, 425, 278 *A.*2d 417 (1971); *see also Gilbert v. Gladden,* 87 *N.J.* 275, 281 n. 3, 432 *A.*2d 1351 (1981) (separation of powers does not "require an absolute division of powers among the three branches of government"). "On the contrary, the doctrine necessarily assumes the branches will coordinate to the end that government will fulfill its mission." *Brown v. Heymann,* 62 *N.J.* 1, 11, 297 *A.*2d 572 (1972). The doctrine "denotes not only independence but also interdependence among the branches of government." *Knight v. City of Margate,* 86 *N.J.* 374, 388, 431 *A.*2d 833 (1981). Hence, in many circumstances branches share complementary responsibilities to achieve a stated governmental objective.

As a general principle, the punishment of criminal defendants does not fit neatly within a single branch of government. The Legislature defines crimes and establishes the appropriate punishment for their commission. That power includes the ability to enact mandatory-sentencing statutes that eliminate any opportunity for a lesser punishment. *State v. DesMarets,* 92 *N.J.* 62, 80–81, 455 *A.*2d 1074 (1983). The prosecutor, a member of the executive branch, determines the extent of a defendant's sentencing exposure when deciding what charges will be brought. *See In re L.Q.,* 227 *N.J.Super.* 41, 48, 545 *A.*2d 792 (App.Div.1988); *State v. Smith,* 202 *N.J.Super.* 578, 592, 495 *A.*2d 507 (Law Div.1985). Moreover, the executive branch has the constitutional authority to administer a parole system that may end incarceration prior to the expiration of a judicially-imposed base term of imprisonment. *N.J. Const.* art. V, § II, para. 2. Finally, the Constitution grants the Governor unreviewable power to pardon offenders and to commute judicially-imposed sentences. *N.J. Const.* art. V, § II, para. 1; *N.J.S.A.* 2A:167–4.

Although sentencing discretion is shared to some extent among the three branches of government, the determination of the sentence is committed to the discretion of the

judiciary. *See State v. Warren,* 115 *N.J.* 433, 447, 558 *A.*2d 1312 (1989). Even when the State and a defendant have entered into a plea agreement, a court in discharging its sentencing duties may not simply accept the arrangement without reviewing its factual support and the circumstances surrounding its formation. *See State v. Sainz,* 107 *N.J.* 283, 292–93, 526 *A.*2d 1015 (1987).

In only a few instances, has the Legislature limited that discretion. See *N.J.S.A.* 2C:43–6c (the Graves Act); *N.J.S.A.* 2C:14–6 (repeat sex offenders). Under those statutes, however, the court automatically imposes a mandatory sentence after a conviction for a qualifying offense, without regard to prosecutorial consent. Section 6f is substantively different from those statutes. Section 6f permits leniency in some circumstances, but only those in which the prosecutor consents. The infirmity in Section 6f is the prosecutor's sole discretion to select, without standards and without being subject to the court's review, which defendants will receive an increased sentence or enjoy favorable treatment.

Where the Legislature has permitted the executive to select defendants for enhanced punishment or favorable treatment, this Court has generally required that decision-making be carried out in a fashion that limits potential arbitrariness. In addition, we have required that the judiciary retain the power to review prosecutorial decisions to avoid abuses of discretion. We continue that approach today.

In *State v. Leonardis,* 71 *N.J.* 85, 363 *A.2d* 321 (1976) (*Leonardis* I), we examined prosecutorial decisions to admit offenders into pre-trial intervention (PTI) programs. Such programs are designed to provide an alternative to the traditional system of prosecuting and incarcerating criminal suspects. *Id.* at 92, 363 *A.*2d 321. Entrance into PTI programs, a significant and beneficial alternative to trial and possible incarceration for defendants, and the ultimate dismissal of charges are conditioned on approval of the prosecutor. *Id.* at 113, 363 *A.*2d 321.

One of the *Leonardis* I defendants challenged the Hudson County Prosecutor's refusal to articulate reasons for denying him admission into a PTI program. *Ibid.* Concerned by the "virtually untrammeled discretion which has been vested in prosecutors associated with the PTI programs," we concluded that we could not "sanction a decisional process which might yield *ad hoc* or arbitrary determinations." *Id.* at 121, 363 *A.*2d 321. To safeguard against such abuses, we required that prosecutors follow written guidelines when determining which defendants would have an opportunity to enter the program. *Ibid.* In addition, we required prosecutors to furnish a written statement of the reasons for denial of admission. *Id.* at 119, 363 *A.*2d 321. We noted that at "the very least, disclosure [would] alleviate existing suspicions about the arbitrariness of given decisions" of the prosecutor and would at best assist in "adequately prepar[ing] for judicial review" of prosecutorial decisions. *Id.* at 115, 363 *A.*2d 321.

On reconsideration, we reaffirmed the judicial power to review arbitrary executive decisions, and noted that "[c]ertainly, the prosecutor is not immune from the ban against arbitrariness in governmental decision-making." *Leonardis* II, *supra,* 73 *N.J.* at 377, 375 *A.*2d 607. Although recognizing that "great deference should be given to the prosecutor's determination" regarding admission to PTI programs, we nonetheless held that only where a defendant makes a clear and convincing showing of patent and gross abuse of discretion may the sentencing court reverse that determination. *Id.* at 381–82, 375 *A.*2d 607.

Similarly, in *Monks v. New Jersey State Parole Board,* 58 *N.J.* 238, 277 *A.*2d 193 (1971), we required the Parole Board to provide a statement of reasons to inmates who have been denied parole. The Board had twice rejected the petitioner for release. After the second denial, he requested reasons for the denial so that he could conform his behavior to appropriate standards or could refute unfavorable information contained in the Board's files. His request was denied. *Id.* at 240, 277 *A.*2d 193.

We held that considerations of simple fairness require that a denial of parole be accompanied by a written statement of reasons. *Id.* at 246, 277 *A.*2d 193. We reasoned that such statements would provide a basis for judicial review, *id.* at 244–45, 277 *A.*2d 193, and we found that drafting reasons for denial would "also serve as a suitable and significant discipline on the Board's exercise of its" discretionary power. *Id.* at 249, 277 *A.*2d 193. If prosecutorial discretion cannot go unchecked with respect to parole and PTI programs, it certainly cannot go unchecked when it concerns extended terms of imprisonment.

Recently, in *State v. Warren,* 115 *N.J.* 433, 558 *A.*2d 1312 (1989), we prohibited use of "negotiated sentence" plea agreements, in which the prosecutor reserves the right to withdraw from a plea agreement and compel the defendant to go to trial if the court-imposed sentence is more lenient than the one agreed to by the parties or recommended to the court by the prosecutor. *Id.* at 437, 558 *A.*2d 1312.

Noting that "we cannot overstress the significance of the judicial responsibility in imposing sentence," we invalidated such agreements. *Id.* at 449, 558 *A.*2d 1312. We continued: " '[P]ronouncement of judgment of sentence is among the most solemn and serious responsibilities of a trial court. \* \* \* Our new Code reflects a delicate balance between discretion and fixed sentencing. An independent judiciary is its fulcrum.' " *Ibid.* (quoting *State v. Roth,* 95 *N.J.* 334, 365, 471 *A.*2d 370 (1984)); *accord New Jersey State Parole Bd. v. Byrne,* 93 *N.J.* 192, 460 *A.*2d 103 (1983). Further, we explained:

> The determination of a criminal sentence is always and solely committed to the discretion of the trial court to be exercised within the standards prescribed by the Code of Criminal Justice. That discretion should not by implication be encumbered by augmenting the prosecutor's influence on the sentencing determination. Such limitations on prosecutorial influence over sentencing have long been understood and accepted in defining the prosecutorial role in criminal sentencing \* \* \*. [*Warren, supra,* 115 *N.J.* at 447–48, 558 *A.*2d 1312 (citations omitted).]

In addition, we cautioned that such unlimited prosecutorial discretion would be inimical to the important goals of uniformity.

Individual prosecutors with distinctive perceptions of the gravity of particular offenses and offenders, and responsive to a very different constituency from that of the judiciary, would add undue variability, inevitable inconsistency, and greater disparity to the sentencing process. Hence, separate prosecutorial discretion cannot be superimposed on the court's sentencing discretion. [*Id.* at 449, 558 *A*.2d 1312.]

The Section 6f extended-term provision gives the prosecutor more discretion than did the negotiated-sentence agreements we rejected in *Warren.* In *Warren,* the trial court, although faced with the prospect of risking trial of defendant, had nonetheless been free to reject the plea agreement in its entirety. However, once a prosecutor applies for an extended sentence under Section 6f and establishes a prior conviction, the sentencing judge has no discretion to reject the enhanced sentence. Such unfettered discretion exceeds the permitted "prosecutorial influence on the sentencing determination" that we addressed in *Warren, id.* at 448, 558 *A*.2d 1312. *See also State v. Todd,* 238 *N.J.Super.* 445, 448, 570 *A*.2d 20 (App.Div.1990) (court found implied judicial authority to review arbitrary decisions by prosecutors under *N.J.S.A.* 2C:35–14, which requires prosecutorial consent in order for a sentencing court to sentence defendants to a drug-rehabilitation program rather than prison).

Without standards the prosecutorial decision-making process remains unguided, and the danger of uneven application of enhanced sentences increases significantly. Such results upset the principal goal of the Code of Criminal Justice to insure sentencing uniformity. *See Roth, supra,* 95 *N.J.* at 365, 471 *A*.2d 370. As currently written, therefore, Section 6f, with its lack of any guidelines and absence of any avenue for effective judicial review, would be unconstitutional.

That statutes are presumed to be valid is well-established, however, and "even though a statute may be open to a

construction which would render it unconstitutional or permit its unconstitutional application, it is the duty of the Court to so construe the statute as to render it constitutional if it is reasonably susceptible to such interpretation." *State v. Profaci*, 56 *N.J.* 346, 350, 266 *A.*2d 579 (1970); *accord Town Tobacconist v. Kimmelman*, 94 *N.J.* 85, 104, 462 *A.*2d 573 (1983); *Right to Choose v. Byrne*, 91 *N.J.* 287, 450 *A.*2d 925 (1982). Rather than striking down Section 6f, we construe it in a manner that upholds its constitutionality. We are certain that the Legislature would prefer the statute to survive as construed. *See Schmoll v. Creecy*, 54 *N.J.* 194, 202–03, 254 *A.*2d 525 (1969).

Accordingly, we interpret the statute to require that guidelines be adopted to assist prosecutorial decision-making with respect to applications for enhanced sentences under *N.J.S.A.* 2C:43–6f. Those guidelines should reflect the legislative intent to make extended sentencing of repeat drug offenders the norm rather than the exception. However, prosecutors should remember that the Legislature did not mandate extended sentences, recognizing that in certain circumstances enhanced punishment may be unwarranted.

Because we are not familiar with all of the factors that law-enforcement agencies might consider significant in determining whether a defendant should be exempted from an extended sentence, we request that the Attorney General, in consultation with the various county prosecutors, adopt guidelines for use throughout the state. Such guidelines will promote uniformity and provide a means for prosecutors to avoid arbitrary or abusive exercises of discretionary power.

Moreover, to permit effective review of prosecutorial sentencing decisions, prosecutors must state on the trial court record the reasons for seeking an extended sentence. Such a statement will provide for effective judicial review and will help to insure that prosecutors follow the guidelines in each case.

Finally, we find that the Legislature did not intend to circumvent the judiciary's power to protect defendants from arbitrary application of enhanced sentences. To protect against such arbitrary action, an extended term may be denied or vacated where defendant has established that the prosecutor's decision to seek the enhanced sentence was an arbitrary and capricious exercise of prosecutorial discretion.

We emphasize that the burden on defendant to prove that a prosecutor's decision to deny leniency constituted an arbitrary and capricious exercise of discretion is heavy. Defendants will have to do more than merely make general conclusory statements that a prosecutorial determination was abusive. Instead, they must show clearly and convincingly their entitlement to relief under the standard established herein. Application of that standard is consistent with the legislative determination to make an extended sentence for repeat offenders the norm.

Those safeguards will preserve the separation of powers and carry forward the legislative intent to vest the executive with some influence in the sentencing of repeat offenders. At the same time, judicial authority to prevent arbitrary decision-making will remain intact.

The basis of defendant's due-process claim is essentially the same as his separation-of-powers argument. The arguments dovetail with their focus on the risk of the prosecutor's arbitrary application of the sentencing provision. The concerns that both arguments raise are sufficiently addressed through the articulation of guidelines by the State and by the preservation of adequate judicial review of prosecutorial decisions.

## III

We reject defendant's contention that the statute denies him equal protection of law by treating him differently from other offenders convicted of the same crimes but not burdened with previous drug-related convictions.

■ "Although the phrase 'equal protection' does not appear in the New Jersey Constitution, it has long been recognized that Article I, paragraph 1, of the State Constitution, 'like the fourteenth amendment, seeks to protect against injustice and against the unequal treatment of those who should be treated alike.'" *Barone v. Department of Human Servs.*, 107 *N.J.* 355, 367, 526 *A.*2d 1055 (1987) (quoting *Greenberg v. Kimmelman*, 99 *N.J.* 552, 568, 494 *A.*2d 294 (1985) (footnote omitted)).

Where a statute does not treat a "suspect" or "semi-suspect" class disparately nor affect a fundamental right, then the provision is subject to a "rational basis" analysis. *Dandridge v. Williams*, 397 *U.S.* 471, 90 *S.Ct.* 1153, 25 *L.Ed.*2d 491 (1970); *Barone, supra*, 107 *N.J.* at 365, 526 *A.*2d 1055. In those circumstances, the governmental action must be rationally related to the achievement of a legitimate state interest. *Right to Choose, supra*, 91 *N.J.* at 305, 450 *A.*2d 925.

When the Legislature has created classifications of offenders for purposes of fixing penalties, the rational-relationship test applies. *State v. Corbitt*, 74 *N.J.* 379, 401, 378 *A.*2d 235 (1977), *aff'd*, 439 *U.S.* 212, 99 *S.Ct.* 492, 58 *L.Ed.*2d 466 (1978); *State v. Fearick*, 69 *N.J.* 32, 38, 350 *A.*2d 227 (1976). In such situations, the Legislature may provide different punishments for offenders convicted of the same crimes so long as there is some rational connection between the classification of offenders and a proper legislative purpose. *Corbitt, supra*, 74 *N.J.* at 401, 378 *A.*2d 235; *Fearick, supra*, 69 *N.J.* at 38, 350 *A.*2d 227.

As we stated in *State v. Smith*, 58 *N.J.* 202, 206–07, 276 *A.*2d 369 (1971):

> The need for a particular or an additional sanction in one area may appear to the legislative mind in different dimensions and proportions—as more acute in one situation than in another.
>
>     *     *     *     *     *     *     *     *
>
> The Legislature has wide discretion in the creation or recognition of different classes of offenders for separate treatment. In pursuing a legitimate objective it may recognize degrees of harm or possible harm and strike at what it feels more urgently needs repression. If there is some reasonable basis for the

recognition of separate classes, and if the disparate treatment of the classes has a rational relation to the objective sought to be achieved by the lawmakers, the Constitution is not offended. The transgression arises only when the classification rests on grounds wholly irrelevant to achievement of the State's objectives; the separate treatment must admit of but one conclusion beyond a rational doubt, *i.e.*, that the basis therefore is arbitrary and unreasonable and without relevance to the legislative goal.

■ The Legislature articulated the purpose behind the Comprehensive Drug Reform Act (of which *N.J.S.A.* 2C:43–6f is a part):

It is the intention of the Legislature to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders * * *. [*N.J.S.A.* 2C:35–1.1(c).]

The enhanced-sentencing provision does not violate equal-protection rights because it is rationally related to the legitimate governmental interest of battling crime by punishing recidivists more severely. Repeat offenders are more dangerous than first-time convicts and more deserving of punishment. That legislative determination is reasonable and based on practical experience. See *South Carolina v. Katzenbach,* 383 *U.S.* 301, 86 *S.Ct.* 803, 15 *L.Ed.*2d 769 (1966); *Fearick, supra,* 69 *N.J.* at 39, 350 *A.*2d 227.

## IV

Defendant also claims that *N.J.S.A.* 2C:35–15 violates his equal-protection rights by imposing mandatory penalties on offenders convicted of drug-related offenses without rationally furthering a legitimate governmental interest. In addition, defendant claims that the $1,000 penalty imposed on him is excessive and constitutes cruel and unusual punishment. We reject both contentions.

■ The statute mandates the imposition of a DEDR penalty on every defendant convicted of a drug-related offense. The statute provides in pertinent part:

a. In addition to any disposition authorized by this title, the provisions of section 24 of P.L.1982, c. 77 (C.2A:4A–43), or any other statute indicating the dispositions that can be ordered for an adjudication of delinquency, every

person convicted of or adjudicated delinquent for a violation of any offense defined in this chapter or chapter 36 of this title shall be assessed for each such offense a penalty fixed at:

\* \* \* \* \* \* \* \*

(3) $1,000.00 in the case of a crime of the third degree. [*N.J.S.A.* 2C:35–15.]

Analysis of the penalty provision's equal-protection implications is identical to that applied to Section 6f. *See ante,* at 34, 601 *A.*2d at 705. The legislative determination to punish offenders convicted of drug-related offenses differently from offenders convicted of other crimes—even if those crimes are more serious—is examined under the rational-basis test. *Ibid.*

The constitutionality of DEDR penalties was thoroughly examined in *In re L.M.,* 229 *N.J.Super.* 88, 550 *A.*2d 1252 (App. Div.1988), *certif. denied,* 114 *N.J.* 485, 555 *A.*2d 609 (1989). In *L.M.,* a juvenile defendant asserted substantially the same constitutional arguments put forth by defendant to challenge the mandatory penalties. The court correctly applied the rational-basis analysis and determined that "there can be no cognizable argument that the Legislature's decision to deal harshly with drug law offenders as a class is constitutionally defective." *L.M., supra,* 229 *N.J.Super.* at 96, 550 *A.*2d 1252. We agree. The Legislature's intent in enacting the mandatory-penalty provision was

to provide for the strict punishment, deterrence and incapacitation of the most culpable and dangerous drug offenders, and to facilitate where feasible the rehabilitation of drug dependent persons so as ultimately to reduce the demand for illegal control of dangerous substances and the incidence of drug related crime. [*N.J.S.A.* 2C:35–1.1(c).]

Imposition of DEDR penalties reasonably furthers the legitimate interests articulated by the Legislature. Use of collected penalties to finance drug-rehabilitation programs and law-enforcement activities is a reasonable method of fighting the ill effects that drugs have on society.

Defendant's contention that the $1,000 penalty imposed on him is manifestly excessive and amounts to cruel and unusual punishment is invalid. For a penalty to amount to

cruel and unusual punishment it must be found to be grossly out of proportion to the severity of the underlying crime. *State v. Ramseur*, 106 *N.J.* 123, 169, 524 *A.*2d 188 (1987). Absent a "substantial showing" that a penalty is disproportionate, the punishment will stand. *DesMarets, supra,* 92 *N.J.* at 82, 455 *A.*2d 1074. Defendant makes no such showing here. A $1,000 fine for distribution of drugs is not grossly disproportionate to the harm inflicted on society as a result of drug dealing, particularly in light of the high profits often associated with the drug trade. In addition, we note that a defendant's inability to pay a penalty does not render the punishment excessive or improper.

Therefore, we find that mandatory DEDR penalties are constitutional and that the $1,000 fine imposed on defendant is proportionate to the crimes for which he has been convicted.

### V

The judgment of the Appellate Division is reversed with respect to its affirmance of defendant's extended-term sentence, but affirmed in all other respects. We remand the matter to the trial court for further proceedings consistent with this opinion.

*For affirmance in part; for reversal in part; for remandment*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.