631 A.2d 588

STATE OF NEW JERSEY, PLAINTIFF, v. ROBERT PAUL DYLAG, DEFENDANT.

Superior Court of New Jersey
Law Division Middlesex County

Decided June 29, 1993.

*Simon L. Rosenbach,* Assistant Prosecutor, for the State (*Robert W. Gluck,* Middlesex County Prosecutor, attorney).

*Jerome J. Convery,* for the defendant.

BERMAN, J.S.C.

"Only painters and lawyers can change white to black." Rufus Choate.

Defendant has charted a most unusual and nimble course in his quest to expunge a municipal court conviction. The issue he raises by that singularly unique path, based on the submissions of counsel, further appears to be *res nova:* may an individual obtain the benefits of a conditional discharge at the municipal level, vacate it thirteen years later when it becomes an impediment to pretrial intervention (hereinafter referred to as "PTI") at the indictable level, and then expunge sequentially the indictable arrest and the municipal conviction? To fully understand this query, the undisputed factual scenario compels recitation.

On August 8, 1974, the defendant was arrested in Perth Amboy, and charged with the disorderly persons offense of possession of marijuana under twenty-five grams, in violation of *N.J.S.A.* 24:21–20(a)(3). The defendant received a "conditional discharge" on September 30, 1974, and successfully completed that program on April 28, 1975.

Fast forwarding to March 26, 1987, the defendant was arrested in Carteret for possession of CDS (i.e., controlled dangerous substance), tampering with physical evidence, and hindering his own apprehension. Since the Perth Amboy conditional discharge precluded admission into PTI on this indictable incident, the defendant, with a large assist from creative and highly skilled counsel, applied for and successfully vacated it on February 29, 1988, entered a plea of guilty, and was fined $100.00 and assessed $10.00 court costs. Parenthetically, this court can only speculate on what authority existed, if any, for the defendant to vacate a 1974 order over thirteen years later merely because it happened to serve his purposes. He received the conditional discharge, completed it, and then vacated it on authority that was questionable at best, non-existent at worst. So much said for the doctrine of "finality" of litigation. In any event, having removed the impediment to PTI, he received that; then having completed PTI, the charges were dismissed on August 11, 1989, and expunged on September 11, 1992. Voila! All that then remained was the Perth Amboy guilty plea which the defendant now seeks to expunge.

The strategies employed by defendant to wipe the slate clean are met by obstacles contained in the provisions of *N.J.S.A.* 2C:52–14(f). The defendant cannot outmaneuver the statutory mandates.

Grounds for Denial of Relief. A petition for expungement filed pursuant to this chapter shall be denied when:

(a) Any statutory prerequisite, including any provision of this chapter, is not fulfilled or there is any other statutory basis for denying relief.

. . . .

(f) The person seeking the relief of expungement of a conviction for a disorderly persons, petty disorderly persons, or criminal offense *has prior to or subsequent to*

*said conviction been granted the dismissal of criminal charges following comple-*
*tion of a supervisory treatment or other diversion program.* (*N.J.S.A.* 2C:52–14;
emphasis supplied.)

Notwithstanding this legislative pronouncement, the defendant argues that he "would have been" entitled under the Youthful Drug Offender section to have his disorderly persons offense expunged. However, not until January 1988, in order to gain entrance into PTI, did defendant seek to have a conviction entered. Defendant could not have expunged a conviction he did not possess: rather, the defendant enjoyed a dismissal status on his 1974 charge for over thirteen years.

Had defendant expunged his municipal conditional discharge, that record would still be available pursuant to *N.J.S.A.* 2C:52–27(b) and his PTI application would have been denied, as defendant well knows. The defendant would have been barred from the benefits of PTI and would presumably have either entered a plea agreement or gone to trial.

The statute clearly forbids defendant from obtaining an expungement of his disorderly persons conviction. Whether the conviction occurs before or after the dismissal of the diversionary program, the conviction is not entitled to an expungement.

The defendant relies on *State v. B.C.,* 235 *N.J.Super.* 157, 561 *A.*2d 688 (Law Div.1989), in support of his position, but his reliance is misplaced. B.C. was placed on supervisory treatment stemming from a disorderly persons offense, and sought successive expungements arising from disorderly persons offenses. The injection of supervisory treatment here at the indictable level makes this case instantly distinguishable.

Similarly, in *State v. Blinsinger,* 114 *N.J.Super* 318, 276 *A.*2d 182 (App.Div.1971), the State was attempting to classify a disorderly persons conviction as a "criminal conviction." Under the statute a subsequent criminal conviction would bar expungement of a prior guilty plea to an accusation. The court determined a disorderly persons conviction was not a "criminal conviction" and would not bar expungement of the accusation.

In this case the State is not attempting to classify a disorderly persons offense as a "criminal charge." The statute specifies that a conviction will not be expunged (whether it be a disorderly persons offense, a petty disorderly persons offense or an indictable offense) if the defendant has been granted a dismissal of criminal charges following a diversionary program. Defendant received a dismissal of criminal charges following the diversionary program (PTI); therefore his conviction is barred from expungement.

Courts have recognized the anomalies that may result from strict adherence to Chapter 52 (Expungement Statutes). For example, in *In re F.A.U.*, 190 *N.J.Super.* 245, 463 *A.*2d 344 (App.Div.1983) the court granted the expungement of the crime but disallowed the expungement of the disorderly persons offense, pursuant to *N.J.S.A.* 2C:52–3. The court made clear the role of the trial judge:

> The function of the trial judge in dealing with the expungement provisions of Chapter 52 of the Code was, as with every statute, to ascertain the intention of the Legislature from the plain meaning of the statute and to apply it to the facts. Because *N.J.S.A.* 2C:52–3 is clear and unambiguous, it was not open to construction or interpretation and the trial judge should not have indulged in any interpretation other than that called for by the statute's express language.

> [*Id.* at 247.]

*N.J.S.A.* 2C:52–14(f) is clear and unambiguous. Almost fifty years ago, the eminent Judge Learned Hand cautioned us: "There is no surer way to misread any document than to read it literally." *Guiseppi v. Walling*, 144 *F.*2d 608, 624 (2d Cir.1944). But even Judge Hand would no doubt admonish us if we ignored the clear and unambiguous language of the controlling statute. As Justice Benjamin Cardozo articulated:

> In countless litigations, the law is so clear that judges have no discretion. They have the right to legislate within gaps, but often there are no gaps. We shall have a false view of the landscape if we look at the waste spaces only, and refuse to see the acres already sown and fruitful.

> [Benjamin Cardozo, *The Nature of the Judicial Process* at 129 (Seventeenth Printing, 1957), cited in *State v. Fearick*, 69 *N.J.* 32, 37, 350 *A.*2d 227 (1976).]

Therefore, this court must deny defendant's petition for expungement of his disorderly persons conviction.  It should be observed that denying his application leaves the defendant where he placed himself: with a plea to a disorderly persons offense he sought out to obtain PTI at the indictable level.  Granting it would emasculate the legislation this court is obligated to respect.